[No. 44314-3-I.    Division One.    April 10, 2000.]

BUDGET RENT A CAR CORPORATION, *Appellant*, v. THE
DEPARTMENT OF LICENSING, *Respondent*.

382

*Michael Edward Kipling* and *Stacie Foster* of *Stokes Lawrence, P.S.*, for appellant.

*Christine O. Gregoire, Attorney General,* and *Pat L. De Marco, Assistant,* for respondent.

Agid, C.J. — During its 1991 audit of Budget Rent A Car Corporation's vehicle registration records, the Washington Department of Licensing (DOL) determined that because Budget had incorrectly calculated the size of its rental fleet in 1989 and 1990, it owed DOL over $700,000 in back fees and taxes. Budget seeks to invalidate this order, arguing that DOL introduced a rule of general applicability without following required rule-making procedures and its order erroneously interprets the International Registration Plan (IRP), the agreement that prescribes the calculation

method. Alternatively, Budget argues that even if the rule is valid under the IRP, DOL is equitably estopped from applying it to Budget because DOL acquiesced in Budget's calculation methods. We hold that although the Washington Administrative Procedure Act does not require agencies to develop standards through rule making rather than adjudication, DOL abused its discretion in this situation by interpreting the IRP, an interstate compact intended to promote uniformity and proportionality, without following rule-making procedures. We also hold that DOL's interpretation is unreasonable and cannot be sustained as a matter of law.

## FACTS

In 1988, Washington joined the IRP, a multistate compact that allows rental car companies to operate their fleets of rental cars in several states without having to purchase separate licenses in each state.[1] In May of 1989, Budget asked for details about the registration process from DOL, the agency authorized to implement and administer the IRP. Chad Harkness, General Manager of Budget's Washington operations, explained that at a meeting with DOL, Budget representatives were given a copy of the IRP and "told to apply it according to its terms." Shortly after the meeting, Budget opted to become a member of the IRP.

Under article XI, section 1116 of the IRP, which Washington adopted in WAC 308-91-090 in 1989, vehicle registration fees are apportioned among states in which rental car companies operate according to the following formula:

> To determine the percentage of total fleet vehicles that shall be registered in a jurisdiction, divide the gross revenue received in the preceding year for use of such rental vehicles

[1]*See* ch. 46.87 RCW. In 1987, the Legislature renamed this RCW chapter "Proportional Registration." RCW 46.87.010 provides that rental car companies operating in two or more IRP jurisdictions may elect to register their vehicles proportionally under the IRP in lieu of full or temporary registration as provided for in chapters 46.16 and 46.88 RCW.

arising from passenger car rental transactions occurring in the jurisdiction by the total gross revenue received in the preceding year for the use of such rental vehicles arising from passenger car rental transactions occurring in all jurisdictions in which such vehicles are operated. The resulting percentage shall be applied to the *total number of passenger cars in the fleet* and that figure shall be the number of rental passenger cars that shall be fully registered in the jurisdiction.[2]

In applying this standard, Budget reasoned that the "total number of passenger cars in the fleet" meant "the total number of cars owned by Budget that were available for rent at a particular point in time . . . ." It therefore applied the "average fleet method" to determine its fleet size. Although Budget's explanation of this calculation method at the administrative hearing was not entirely clear, it explained at oral argument that it resembles the "full time equivalent" calculation companies use to determine the number of full-time employees they have when some employees share jobs or work part time. Thus, if a car in service for three months is replaced by another car which is used for the rest of the year, Budget's method counts these two cars as one because replacement cars do not increase its fleet size of cars available for rent. Based on this understanding, Budget decided to "turn" the cars in its fleet an average of 2-3 times per year.

In 1991, during an audit of Budget's 1989-90 operations, DOL used what Budget refers to as the "total purchases" method of calculating fleet size and determined that Budget was in default of over $700,000. This method adds each car purchased during the year to the total number of cars in the fleet, regardless of whether another car is retired simultaneously. Budget points out that this method results in a fleet size that far exceeds the number of cars in Budget's fleet at any point during the year. Following an October 1991 hearing, an administrative law judge (ALJ) upheld the assessment.

---

[2]IRP article XI § 1116 (emphasis added). The current version of WAC 308-91--090 includes an amended version of this provision.

Budget then petitioned for review by the DOL Director. In a final order issued in April 1994, the Director upheld application of DOL's "total purchase" standard:[3]

There is nothing in the record to suggest that the "total fleet" did not mean the total of all vehicles purchased during the assessment year. . . . As Budget was well aware, Washington law had required a separate registration for each newly acquired vehicle, even if the new vehicle replaces a previously licensed vehicle that was less than one year old. That transactional focus of Washington vehicle tax law was not amended by the adoption of the International Registration Plan or its extension to the registration of rental vehicles. On that basis each vehicle becomes part of the total fleet when acquired, even if some other vehicle is retired at approximately the same time.

The King County Superior Court affirmed this order and Budget appeals, contending that during its 1991 audit of Budget's vehicle registration records, DOL "created and applied retroactively a new set of standards to be used in determining the minimum number of automobile licenses purportedly required from Budget in prior years." Arguing that DOL promulgated this "rule" without following Washington Administrative Procedure Act (APA) rule-making procedures, that the order applied an erroneous interpretation of the IRP, and that, in any event, DOL is estopped from applying the new standards to Budget because it acquiesced to Budget's calculation method, Budget seeks to invalidate the Director's order.

## DISCUSSION

At the outset, we note that Budget's reliance on *Simpson Tacoma Kraft Co. v. Department of Ecology*[4] is misplaced. Relying primarily on *Simpson*, which held that agency standards of widespread applicability must be adopted through

---

[3]The Director reversed the ALJ, however, on two other standards not at issue here—the value class and calendar year standards.

[4]119 Wn.2d 640, 835 P.2d 1030 (1992).

rule making, Budget contends that because DOL intends to apply its "total purchases" interpretation of Article XI § 1116 to all rental car companies, its standard is a "rule" which must comply with APA rulemaking procedures.[5] The *Simpson* court, however, specifically declined to decide whether the Department of Ecology could develop a numeric water quality standard through an adjudication even if the standard met the statutory definition of a "rule," because the issue was not raised below.[6] Thus, *Simpson* and its progeny provide no guidance when, as here, the issue of whether an agency may advance a statutory interpretation of widespread application during an individual adjudication is properly before the court.

■ ■ Under the Washington APA, unless a statute specifically requires adoption of a rule, agencies may develop policy either by rule making[7] or adjudication.[8] Although generally, "rulemaking has distinct advantages over adjudication as a policymaking technique,"[9] Washington, like the majority of state and federal courts, has chosen to encourage,[10] rather than require, creation of policy through rule making. However, in *Union Flights, Inc. v. Federal*

---

[5]The APA defines "rule" as "any agency order, directive, or regulation of general applicability . . . ." RCW 34.05.010(16).

[6]119 Wn.2d at 649. Citing *Simpson*, Donald F. Cofer & Richard A. Finnigan observe in the WASHINGTON ADMINISTRATIVE LAW PRACTICE MANUAL (1998) that "[i]t is not so clear what happens when an agency takes action through some other legitimate vehicle, such as adjudication . . . and that action in some respects arguably meets the definition of a rule, that is, the action could be viewed as an agency order, directive or regulation of general applicability." Section 7.03(C), at 7-10.

[7]*See* RCW 34.05.310.

[8]*See* RCW 34.05.410. Federal courts endorse adoption of policy by adjudication. *See Lineas Aereas del Caribe v. Department of Transp.*, 791 F.2d 972, 978 (D.C. Cir. 1986) (rejecting petitioner's "inexplicable" argument that the Federal Aviation Administration could not promulgate contested rule by adjudication rather than rule making; "[T]he FAA flies by the book when it develops and applies a policy in an adjudicatory proceeding and announces that it will also apply the policy prospectively.").

[9]William R. Andersen, *"The 1988 Washington Administrative Procedure Act—An Introduction,"* 64 WASH. L. REV. 781, 796-97 (1989).

[10]RCW 34.05.220(4) encourages "[e]ach agency that is authorized by law to exercise discretion in deciding individual cases . . . to formalize the general

*Aviation Administration*,[11] the Ninth Circuit recognized that "[a]dministrative agencies are generally free to announce new principles during adjudication,"[12] but observed that agencies may not do so if it would constitute an abuse of discretion[13] or circumvent APA requirements. We adopt this standard here. Because an agency does not circumvent APA requirements when it interprets a rule during an adjudication, we must determine whether DOL abused its discretion by advancing its "total purchases" interpretation of article XI, section 1116 during the 1991 audit.

■ As the DOL Director recognized, the IRP "was initially conceived and drafted in the early 1970s as an equitable way to apportion license fees among the states and to provide for reciprocity for commercial and rental fleet vehicles." When Washington joined the IRP, the Legislature enacted chapter 46.87 RCW, entitled "Proportional Registration," which authorized Washington rental car companies operating in two or more IRP member jurisdictions to "proportionally register the vehicles of the fleet under the provisions of the IRP . . . ."[14] It is clear from this brief history that the IRP is intended to promote uniformity, proportionality, and equitability in rental car registration among member jurisdictions, and that Washington endorsed these goals when it adopted the IRP.

Contrary to the purposes of this interstate statute, however, DOL derived a calculation method from article XI, section 1116 that differs markedly from other jurisdictions' methods without acknowledging other interpretations and without the benefit of rule-making formalities such as notice and comment from interested parties. This was an abuse of discretion. Paul Downey, who was respon-

principles that may evolve from these decisions by adopting the principles as rules . . . ."

[11]957 F.2d 685, 688 (9th Cir. 1992).

[12]*Id.* (citing *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 290-95, 94 S. Ct. 1757, 40 L. Ed. 2d 134 (1974)).

[13]*Id.* at 688.

[14]RCW 46.87.010(3).

sible for administering the IRP in Washington when Budget joined it and who wrote WAC 308-91-090, explained in deposition testimony that to him, article XI, section 1116 "defines itself." He also said that until his October 22, 1992 deposition, he was largely unaware of the various rental fleet calculation methods used by companies in Washington or by other state members of the IRP. He explained during the deposition that he was "beginning to understand that [the Washington DOL's] impression of the IRP and other folks' impression are two different things."

Indeed, Budget presented evidence at the administrative hearing that, based on other jurisdictions' interpretations of the IRP, Dollar and Thrifty rental car companies employ the average fleet method, while Hertz uses the "highest fleet," or "North Carolina" method, which sets the fleet size as the greatest number of cars in the rental fleet during a given year. Before advancing an interpretation contrary to these methods used in other IRP jurisdictions, DOL should have examined these methods, given notice, solicited comment, and attempted to determine which method comports with the IRP's purposes. While we do not believe that every IRP jurisdiction must adopt identical calculation methods under article XI, § 1116, we conclude that, in order to ensure proportionality and equitability, states should not interpret this interstate compact in a vacuum.

■ Our conclusion that DOL abused its discretion by advancing its interpretation of an interstate compact of general applicability without following rule-making procedures is buttressed by our view that DOL's interpretation is inconsistent with the clear terms of the IRP. Article XI section 1116 of the IRP[15] sets forth a two-step process: (1) divide the revenue obtained from rental car operations in a single state by the total revenue received in all states in which the company operates, and (2) apply this percentage to the "total number of passenger cars in the fleet" to

---

[15]This provision is quoted above, *see, supra,* at 383-84.

determine, on the basis of revenue received in a given state, how many rental cars should be registered there.

To determine what "total" means in this context, the DOL Director consulted BLACK'S LAW DICTIONARY and concluded that "total" means "whole, not divided, lacking no part, entire, full, complete, the whole amount." Based on this definition, the Director concluded that Budget must include every car it purchased in a year in its "total number of passenger cars in the fleet." This conclusion ignores the fact that an eminently more reasonable definition of "total" in this context is that it means the sum total of the fleet size in *all* jurisdictions in which the company operates rather than the fleet size in a particular jurisdiction. The phrase "total gross revenue" in the preceding sentence, which is used to distinguish between revenues derived in "all jurisdictions" and revenue derived from Washington only, provides support for this interpretation. Similarly the "total number of passenger cars in the fleet" should include cars in the "total" area of Budget's operations—not just one state.[16]

In addition to contradicting the IRP's clear terms, DOL's interpretation also results in an artificial number that bears no relationship to the number of cars that produced the revenue for that year. The American Association of Motor Vehicle Administrators states in official IRP commentary that article XI, section 1116 "requires the use of revenue, rather than miles, in determination of the quotient to be used in registering rental passenger cars. This revenue quotient approach was agreed by the drafters to be the only feasible method of determining the total number of rental passenger cars to be fully registered in each jurisdiction." Because revenue is generated only by cars in service,

---

[16]It should be noted that the DOL Director characterized Budget's argument below as "the total vehicles subject to registration in any one jurisdiction should be the average number of vehicles available for rent in *that jurisdiction* at any one time rather than the total number of vehicles it has available for rent in *all jurisdictions in any one year.*" (Emphasis added.) This is clearly a mischaracterization, and it is unclear whether Budget actually took this position below or the Director misinterpreted its argument. This is clearly *not* the argument Budget makes on appeal.

Budget is correct that it is more reasonable to apply this "revenue quotient" to a representative fleet size. Further, a significant purpose of the IRP is to compensate states for wear and tear on state highways. The degree to which Budget "used" Washington's highways is not affected by its replacing cars in the fleet. We hold that the methods used by other states, unlike DOL's method, reflect the IRP's goals.[17]

We conclude that although DOL had the *authority* to interpret this statute during an adjudication, and therefore did not circumvent APA requirements, doing so was an abuse of discretion. It is clear from the record that at least three methods of calculating rental fleets are currently used under the IRP, a point that the Washington DOL was apparently unaware of when it applied the "total purchase" method during Budget's 1991 audit. Because Washington's interpretation of the IRP will affect other states, notice, comment, and consideration of other states' methods is essential to the DOL's development of its own policy. In addition, in light of the DOL's misinterpretation of Budget's argument below and of the meaning of the word "total" in the context of the statute, the considerably higher rental fleet calculation that its method compels, and the potential that Washington's rule may result in unfair results when applied to companies that operate in several states, its interpretation of the IRP is erroneous.

Reversed and remanded for proceedings consistent with this opinion.

WEBSTER and Cox, JJ., concur.

Reconsideration denied May 23, 2000.

Review granted at 142 Wn.2d 1007 (2000).

---

[17]Because we have decided that DOL should have interpreted the IRP through rule making, we need not address Budget's estoppel argument.