12 P.3d 144 (2000)
142 Wash.2d 316
McGEE GUEST HOME, INC., a Washington corporation; Gerald and Anntoni Pratt, husband and wife, d/b/a Valley Community Inn; Lynda Sadlier, d/b/a Court "C" Residential Center; IDE Congregate Care, Inc., a Washington corporation, d/b/a myhome; Tacoma Congregate Care, Inc., a Washington corporation; and Memory Lane/Oak Hill, Inc., a Washington corporation, d/b/a Memory Lane, Oak Hill and Hilltop Center, Respondents,
v.
DEPARTMENT OF SOCIAL AND HEALTH SERVICES OF THE STATE OF WASHINGTON; Pierce County, a municipal corporation; and Spokane County, a municipal corporation, Petitioners.
No. 68588-6.
Supreme Court of Washington, En Banc.
Argued September 21, 2000.
Decided November 9, 2000.
*146 John Francis Sullivan, Bellevue, for petitioners.
Christine Gregoire, Atty. Gen., Carl Berton Paul, Asst. Atty. Gen., Olympia, for respondents.
*145 TALMADGE, J.
We are asked in this case to decide if the Department of Social and Health Services (Department) violated Washington's Administrative Procedure Act (APA) chapter 34.05 RCW, in establishing and maintaining a two-tiered reimbursement system for congregate care facilities (CCFs) serving mentally ill people for whom the state was responsible. We hold the Department did not violate the APA, as the Legislature amended RCW 34.05 in 1994 to clarify its view that rule-making requirements do not apply to "reimbursement unit values, fee schedules, arithmetic conversion factors, and similar arithmetic factors used to determine payment rates that apply to goods and services purchased under contract for clients" eligible for state medical assistance. RCW 34.05.030(4). We find this legislative change applies retroactively to this controversy. We further hold the Legislature did not unconstitutionally delegate its power to the Department. We, therefore, remand the case to the trial court for entry of judgment in favor of the Department.

ISSUES
(1) Did the Department violate the APA in failing to adopt by rule the two-tiered reimbursement system for CCFs providing mental health services?
(2) If the Department violated the APA, what statute of limitations applies to the CCFs' claims for quantum meruit?
(3) If the Department did not violate the APA, did the Legislature make an unconstitutional delegation of its power to the Department with respect to the Department's rate setting for CCFs?

FACTS
The plaintiffs in this action are among the larger (16 beds or more) CCFs that provided residential services to Medicaid-qualified mentally ill people. They are seeking additional reimbursement for those services contending the Department established a two-tiered reimbursement structure, with a higher daily rate for smaller CCFs, in violation of the APA.
In 1969, the Legislature first enacted RCW 74.08.045 conferring authority on the Department to contract with CCFs for services. At times pertinent to this controversy, the statute stated that rates must be "reasonable":
The department may purchase such personal and special care at reasonable rates established by the department from substitute homes and intermediate care facilities providing [provided] this service is in compliance with standards of care established by the regulations of the department.
RCW 74.08.045.
In 1977, the Department first promulgated former WAC 388-29-130, repealed by WSR XX-XX-XXX (Apr. 6, 1994), which implemented the provisions of RCW 74.08.045. The next year, the Department advised CCFs by letter it was instituting the two-tiered reimbursement system effective July 1, 1978. The CCFs did not like the two-tiered system and made their views known to the Legislature and the Governor. Governor John Spellman's Advisory Committee on rates recommended the elimination of the two-tiered *147 structure. The Department in 1984 agreed with that recommendation and eliminated the two-tiered structure for all CCFs except those providing services to the mentally ill. The Department at that time amended WAC 388-29-130 to specifically allow the two-tiered reimbursement for CCFs providing services to mentally ill people. Subsequently, in 1985, the Department again amended WAC 388-29-130 to simply provide that the rates would be as established by the Department.[1] Beginning in 1991, the contracts between the Department and the CCFs did not specify rates but incorporated by reference the rates established by the Department.
Except for the period from July 1, 1984 to December 31, 1985, former WAC 388-29-130 did not specifically reference a two-tiered reimbursement structure for CCFs providing to the mentally ill.
In the late 1980s, the Legislature significantly restructured the mental health care system in Washington. Specifically, Regional Support Networks (RSNs) were created to provide services and contract with CCFs. RCW 71.24.025(14). The transition from DSHS to the RSNs was phased in over time, depending on when the local RSNs was created. RCW 71.24.035(15)-(17). The trial court stayed any consideration of obligations accrued after June 30, 1993 (the date many RSNs became solely responsible for contracting with CCFs) until after the completion of this action. Order Granting Partial Summary Judgment (April 3, 1998), CP 1232.
Although the CCFs lobbied the Legislature and Governor for more favorable reimbursement rates, they did not file the present suit to set aside the two-tiered structure of reimbursement until 1995. The CCFs' suit asked that their reimbursement contracts with the Department be invalidated, claiming the two-tiered reimbursement system should have been adopted as a rule pursuant to the APA. The CCFs contended they were entitled to the reasonable value of their services on the basis of quantum meruit if the contracts were invalid. They also argued the six-year statute of limitation for written contracts, RCW 4.16.040(1), applied to this controversy.
The CCFs and the Department both moved below for summary judgment. The trial court largely agreed with the CCFs, reserving only the issue of post 1993 claims for trial because there was a question of fact as to whether the Department or the RSNs controlled the reimbursement of CCFs.[2]
The Court of Appeals, Division Two, reversed the trial court concluding no APA rule making was required for the Department to utilize a two-tiered reimbursement scheme for CCFs. McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs., 96 Wash.App. 804, 981 P.2d 459 (1999). The CCFs petitioned for review, which we granted.

ANALYSIS
We stand in the same place as the trial court when reviewing summary judgment motions; we review the evidence de novo, with all inferences taken in favor of the nonmoving party. Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998). Summary judgment should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
A. STATUTORY ANALYSIS
Whether an agency's action is rule-making, despite bearing some other label, is determined under the APA. To be deemed a rule, the action must be "any agency order, directive, or regulation of general applicability." Former RCW 34.04.010(2) (1982), recodified as RCW 34.05.010(16). Further, the agency action must fall into one of five enumerated categories. In this case, the most applicable category requires the action "establishes, *148 alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law." Former RCW 34.04.010(16)(c), recodified as RCW 34.05.010(16)(c). We have been vigilant in insisting that administrative agencies treat policies of general applicability as rules and comply with necessary APA procedures. See, e.g., Simpson Tacoma Kraft Co. v. Dep't of Ecology, 119 Wash.2d 640, 648, 835 P.2d 1030 (1992); Hillis v. Dep't of Ecology, 131 Wash.2d 373, 932 P.2d 139 (1997).
The principal case advanced by the CCFs in support of their position is Failor's Pharmacy v. Dep't of Soc. & Health Servs., 125 Wash.2d 488, 886 P.2d 147 (1994), a case in which we invalidated a two-tiered reimbursement system for pharmacies filling prescriptions for Medicaid-qualified individuals. The federal Medicaid regulations established a two-factor process for establishing the reimbursement rates for pharmacies. The Medicaid reimbursement rates were to be calculated on the basis of "(1) actual or estimated cost for pharmacies to acquire drug ingredients, and (2) a dispensing fee." Failor's, 125 Wash.2d at 491, 886 P.2d 147 (citing 42 C.F.R. § 447.331). The Department then promulgated a rule mirroring the federal regulation. That rule established reimbursement rates would be based on (1) the cost of ingredients and (2) a dispensing fee. Failor's, 125 Wash.2d at 491, 886 P.2d 147 (citing WAC 388-91-040(4), repealed by WSR XX-XX-XXX (Oct. 9, 1996)). In administering this Medicaid program, however, the Department used a multitiered reimbursement system based on the number of prescriptions filled annually. Failor's, 125 Wash.2d at 492, 886 P.2d 147. DSHS apparently concluded these factors would differ according to the size of the pharmacy, and adjusted its reimbursement rates accordingly. The Department commissioned cost studies before adopting the tiered system, but did not promulgate its tiered system through rule making. Failor's, 125 Wash.2d at 492, 886 P.2d 147.
We found the Department had functionally added a third requirement to the two requirements set out in the federal regulations, and thus had improperly established, altered, or revoked a qualification for the enjoyment of a benefit. We invalidated the agency action as improper without prior APA rule making. Failor's, 125 Wash.2d at 494, 886 P.2d 147. Moreover, we invalidated the contracts between the state and the pharmacies. Id.
While the trial court in the present case found Failor's controlling and therefore granted relief to the CCFs, the Court of Appeals distinguished Failor's, noting it rested on the fact the Department had changed the methodology of reimbursement for participants in the Medicaid program by essentially adding an element to the cost calculation. McGee, 96 Wash.App. at 809-10, 981 P.2d 459. The Court of Appeals reasoned that since there were no factors beyond "reasonable" laid out for the Department to use by statute or by rule in determining the payment rates offered to congregate care facilities, the Department had not changed any qualifications for benefits in adopting the tiered system. McGee, 96 Wash.App. at 810-11, 981 P.2d 459.
While the Court of Appeals' analysis of Failor's and the APA is reasonable, we need not follow it because a simpler basis exists for arriving at the conclusion reached by the Court of Appeals; the Legislature's 1994 amendments to the APA are retroactive and provide the Department did not promulgate a rule in establishing the rates for the CCFs. The Legislature amended the APA in 1994 to exempt from rule-making requirements "reimbursement unit values, fee schedules, arithmetic conversion factors, and similar arithmetic factors used to determine payment rates that apply to goods and services purchased under contract for clients" receiving state medical assistance. RCW 34.05.030(4).
The bill report for Engrossed Senate Bill 6404, which in 1994 passed both houses of the Legislature unanimously, made reference to the trial court decision in Failor's:
Fee schedules set by the Department of Social and Health Services Medical Assistance Administration (MAA) are established according to the legislatively-approved budget provisions. There is little discretion in setting payment rates since *149 these activities are primarily arithmetic rather than discretionary in nature.
A recent superior court decision ruled that the adoption of rate schedules by the MAA is "rulemaking" and must comply with the Administrative Procedure Act. This decision, if applied to present practice, would delay MAA's ability to change payment rates for providers.
Br. of Appellant, App. 2. The bill report went on to indicate the intent of the Legislature to "clarify" the law in light of that superior court decision:
It is clarified that arithmetic calculation of payment rates for services and items purchased under contract for clients eligible under 74.09 RCW (public assistance for medical care) are explicitly exempt from the state Administrative Procedure Act.
Id. Our decision in Failor's did not address the effect of the 1994 amendment.
Our general purpose is to sensibly analyze statutes to effectuate the intent of the Legislature. Morgan v. Johnson, 137 Wash.2d 887, 892, 976 P.2d 619(1999). In fact, amendments to statutes may be applied retroactively to effectuate legislative intent. Harbor Steps Ltd. Part'ship v. Seattle Technical Finishing, Inc., 93 Wash.App. 792, 798, 970 P.2d 797, review denied, 138 Wash.2d 1005, 984 P.2d 1034 (1999).
Generally, statutory amendments apply prospectively. Magula v. Benton Franklin Title Co., 131 Wash.2d 171, 181, 930 P.2d 307 (1997). However, an amendment will be applied retroactively if, "(1) the legislature so intended; (2) it is `curative'; or (3) it is remedial, provided, however, such retroactive application does not run afoul of any constitutional prohibition." State v. Cruz, 139 Wash.2d 186, 191, 985 P.2d 384 (1999) (citing In re F.D. Processing, Inc., 119 Wash.2d 452, 460, 832 P.2d 1303 (1992)). We look to both the statute's purpose and the language in analyzing the issue of retroactivity. Howell v. Spokane & Inland Empire Blood Bank, 114 Wash.2d 42, 47, 785 P.2d 815 (1990). We may also look to the legislative history in analyzing this question. F.D. Processing, 119 Wash.2d at 460, 832 P.2d 1303. Final legislative bill reports are pertinent in this regard. Young v. Snell, 134 Wash.2d 267, 280, 948 P.2d 1291 (1997).
In this case, we believe the Legislature intended its amendments to the APA in 1994 to be retroactive. First, the 1994 amendments were "curative" in nature. "An amendment is curative only if it clarifies or technically corrects an ambiguous statute." F.D. Processing, 119 Wash.2d at 461, 832 P.2d 1303. Ambiguity exists when a law "can be reasonably interpreted in more than one way." Vashon Island Comm. for Self-Gov't v. Wash. State Boundary Review Bd., 127 Wash.2d 759, 771, 903 P.2d 953 (1995).
We often apply amendments retroactively "where an amendment is enacted during a controversy regarding the meaning of the law." Tomlinson v. Clarke, 118 Wash.2d 498, 511, 825 P.2d 706 (1992); see also State v. Riles, 135 Wash.2d 326, 343, 957 P.2d 655 (1998). Curative amendments adopted in response to lower court decisions have been applied retroactively. Tomlinson, 118 Wash.2d at 510, 825 P.2d 706; Overton v. Wash. State Econ. Assistance Auth., 96 Wash.2d 552, 558, 637 P.2d 652 (1981). The Legislature's intent to clarify a statute is manifested by its adoption of the amendment "`soon after controversies arose as to the interpretation of the original act[.]'" Johnson, 99 Wash.2d at 559, 663 P.2d 482 (quoting 1A C. Dallas Sands, Statutory Construction § 22.31 (4th ed.1972)).
The 1994 amendments clarified the Legislature's view on a statute that the Failor's superior court decision called into question.[3] Thus, the Legislature clarified an ambiguity in the APA created by that trial court decision.
Moreover, the Legislature clearly directed that the 1994 amendments apply to the establishment of rates such as those paid to the CCFs in this case. The legislative bill report *150 evidenced an intent to restore agency authority to set rates. See S.B. Rep. to ESB 6404, 53d Leg., Reg. Sess. (Wash.1994).
The authority of the Legislature to clarify its own enactments and apply such clarifications retroactively has long been upheld in our law. We do so here, particularly where the enactment of ESB 6404 predated the CCFs' commencement of the present action.[4]
B. CONSTITUTIONAL DELEGATION OF LEGISLATIVE POWER
The CCFs also contend that if the statute allows the Department to establish a two-tiered reimbursement structure under RCW 74.08.045, then the statute constitutes an unconstitutional delegation of legislative power to the Department. We disagree. We have previously established the Legislature may delegate limited law-making authority to an administrative agency if two requirements are met: "(1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power." Barry & Barry, Inc. v. Dep't of Motor Vehicles, 81 Wash.2d 155, 159, 500 P.2d 540 (1972) (emphasis omitted); see also State v. Wadsworth, 139 Wash.2d 724, 743, 991 P.2d 80 (2000). ("The Legislature has an established practice of defining prohibited acts in general terms, leaving to the judicial and executive branches the task of establishing specifics.")
Clearly, RCW 74.08.045 provides what agency was responsible, and what was to be done, so element (1) of the Barry & Barry test is met. We also find the second factor is met here. The statute itself sets out a standard; DSHS must set reasonable rates. Former RCW 74.08.045. Even if the Department was not subject to APA rule making as to the two-tiered reimbursement system, the second prong is satisfied because the CCFs always had the right to seek judicial review of the Department's actions to determine if they complied with the terms of RCW 74.08.045. The rates had to be reasonable. Presumably if the CCFs could demonstrate the rates were so paltry no CCF could stay in business without harming the care of mentally ill people, a court could have acted. This was an ample safeguard, meeting the mandate of Barry & Barry. Moreover, the CCFs had the opportunity to address the reasonableness of the rates in the legislative arena, particularly in each budget cycle since the enactment of RCW 74.08.045. We find no unconstitutional delegation of legislative power to the Department by the enactment of RCW 74.08.045.

CONCLUSION
The Department was not required to undertake rule making before setting the rates it would pay for CCFs' services to mentally ill people. RCW 34.05.030(4). Moreover, the Legislature did not unconstitutionally delegate its power to the Department when it authorized the Department to set reasonable rates of reimbursement for CCFs. We affirm the Court of Appeals that rule making is not required here, albeit on different grounds. Since we find for the Department, we do not reach the question of what statute of limitations to apply. We remand the case to the trial court to grant judgment to the Department.
GUY, C.J., SMITH, JOHNSON, MADSEN, ALEXANDER, SANDERS, IRELAND, and BRIDGE, JJ., concur.
NOTES
[1] Specifically, the regulation at issue stated the payment rate for congregate care facilities "shall be the rate established and published by the department for payment to specific congregate care facilities which contract with the department to provide a specific level of care." Former WAC 388-29-130 (1985).
[2] The CCFs did not petition for review on this issue. Thus, the case before the Court does not involve the regulatory scheme in place since 1993, nor does this case involve congregate care facilities that are not part of the mental health system.
[3] We have held an amendment may not be curative if it contravenes a previous Supreme Court interpretation of the statute. Johnson v. Cont'l West, Inc., 99 Wash.2d 555, 562, 663 P.2d 482 (1983); Overton, 96 Wash.2d at 558, 637 P.2d 652. No issue of this sort is presented here where the Legislature responded specifically to the Failor's trial court decision.
[4] In light of our disposition of this issue, we do not reach the question of the applicable statute of limitations in this case.