[No. 70000-1.   En Banc.]
Argued March 22, 2001.     Decided October 4, 2001.

BUDGET RENT A CAR CORPORATION, *Respondent*, v. THE DEPARTMENT OF LICENSING, *Petitioner*.

890

*Christine O. Gregoire, Attorney General,* and *James T. Schmid, Assistant,* for petitioner.

*Michael E. Kipling* (of *Summit Law Group*) and *Stacie Foster* (of *Stokes Lawrence, P.S.*), for respondent.

MADSEN, J. — In 1988, Washington became a member of the International Registration Plan (IRP), chapter 46.87 RCW, an interstate compact that allows rental car companies to register a proportional number of their vehicles in each state based on the percentage of their total revenue generated in that state. In a 1991 audit, the Washington Department of Licensing (DOL or the Department) determined that Budget Rent A Car Corporation (Budget) failed to register a sufficient number of its vehicles in Washington for the years 1989 and 1990 and, accordingly, the Department assessed over $700,000 in back taxes and registration fees against Budget.

Budget contested this determination, culminating in the Court of Appeals' reversal of DOL's assessment. In a published decision, the Court of Appeals held that the manner in which the Department determined the total number of vehicles in Budget's fleet was improperly adopted through adjudication, rather than rule making in violation of the Washington Administrative Procedure Act (APA) and, further, that the manner of calculation adopted by DOL is inconsistent with the language of the IRP. *Budget Rent A Car Corp. v. Dep't of Licensing*, 100 Wn. App. 381, 997 P.2d 420 (2000). The Department petitioned this Court for its review. We hold that DOL did not create a rule by establishing a manner of calculation under the IRP, and thus, did not engage in impermissible rule making in violation of the APA. We further hold, however, that DOL's interpretation of the IRP is erroneous as a matter of law. Accordingly, we remand for further proceedings not inconsistent with this opinion.

## FACTS

In 1988, Washington adopted the IRP, an interstate compact which, among other things, allows rental car companies operating fleets of vehicles in multiple states to register a proportional number of vehicles in each state based on the revenue generated within the state's borders. Ch. 46.87 RCW; former WAC 308-91-010 (1988), *repealed by* St. Reg. 00-01-150 (Jan. 21, 2000).[1] This allows rental car companies to avoid purchasing multiple state registrations for each rental vehicle. Article XI, section 1116 of the IRP sets forth the formula used to determine how many rental vehicles must be registered in each jurisdiction:

---

[1] Specifically, the Washington Legislature enacted the following provision, which incorporates the terms of the International Registration Plan (IRP) by reference:

Provisions and terms of the IRP and the Western Compact, as applicable, shall prevail unless given a different meaning in chapter 46.04 RCW, this chapter, or in rules adopted under the authority of this chapter.

RCW 46.87.010(1).

> To determine the percentage of the total fleet vehicles that shall be registered in a jurisdiction, divide the gross revenue received in the preceding year for use of such rental vehicles arising from passenger car rental transactions occurring in the jurisdiction by the total gross revenue received in the preceding year for the use of such rental vehicles arising from passenger car rental transactions occurring in all jurisdictions in which such vehicles are operated. The resulting percentage shall be applied to the *total number of passenger cars in the fleet* and that figure shall be the number of rental passenger cars that shall be fully registered in the jurisdiction.

Administrative R. at 284 (emphasis added). Thus, determining how many rental vehicles must be registered in a jurisdiction is a two step process: (1) divide the gross revenue received from rentals in this state by the gross revenue received from rentals in all states; (2) then, multiply the resulting percentage by the *"total number of passenger cars in the fleet."*

The dispute at bar concerns the meaning of this final phrase: "total number of passenger cars in the fleet." The Director of the DOL found that Budget failed to register a proportional share of its rental vehicles in Washington during the years 1989 and 1990. During this period Budget operated exclusively in Washington and Oregon, and during these years Budget interpreted the phrase "total number of passenger cars in the fleet" to mean the average number of cars it owned that were available for rent at a particular time. Under this "average fleet system," if Budget purchased a new vehicle during the year to replace another, it counted both vehicles as one because the replacement vehicle resulted in no net gain in the size of Budget's total fleet size.[2] It is in this manner that Budget calculated the number of cars it registered in Washington.[3]

During a 1991 audit of Budget, DOL employed a "total

---

[2] The practice of consistently replacing rental vehicles with newer ones is termed "turning the fleet" within the rental vehicle industry.

[3] In the spring of 1989, Budget sought guidance from DOL on the manner in which it would administer the IRP. Budget was told to apply the IRP according to its terms. Administrative R. at 144-46.

purchases system" to determine the size of Budget's fleet. Under this manner of calculation DOL counted every vehicle purchased during the year as an addition to Budget's total fleet size. Thus, if Budget traded in and replaced all of its vehicles three times a year, its total fleet size under the Department's calculation would be three times larger than the number of cars Budget had available for rent at any given time. Based on DOL's audit, Budget was assessed over $700,000 in back taxes and fees.

Budget immediately contested the assessment, and it was upheld by an administrative law judge. Budget petitioned for review to the Director of DOL, and on April 25, 1994, the Director issued a final order upholding the use of the "total purchases" standard to Budget's operations, stating:

> There is nothing in the record to suggest that the "total fleet" did not mean the total of all vehicles purchased during the assessment year . . . . As Budget was well aware, Washington law had required a separate registration for each newly acquired vehicle, even if the new vehicle replaces a previously licensed vehicle that was less than one year old. That transactional focus of Washington vehicle tax law was not amended by the adoption of the International Registration Plan or its extension to the registration of rental vehicles. On that basis each vehicle becomes part of the total fleet when acquired, even if some other vehicle is retired at approximately the same time.

Pet. for Review at A13-14; DOL Final Order at 1.3.

Budget filed a petition for review in King County Superior Court. The superior court granted a stay in December 1994. The stay was lifted and the superior court upheld the Director's final order in December 1998. Budget then sought review in the Court of Appeals. The Court of Appeals reversed the Director's final order, holding that the "total purchases" system of calculating Budget's total fleet size was improperly adopted through adjudication rather than rule making in violation of Washington's APA. According to the court, an agency may advance its interpretation of a regulation of general applicability during an adjudication

but "not . . . if it would constitute an abuse of discretion or circumvent APA requirements." *Budget Rent A Car*, 100 Wn. App. at 387 (footnote omitted). The Court of Appeals went on to hold that in this case DOL abused its discretion, and additionally, DOL's interpretation of the IRP was legally erroneous.

DOL petitioned this Court for its review, which was granted.

## ANALYSIS

### I

Budget's principal contention is that DOL's adoption of the "total purchases" method of calculating Budget's rental fleet size under the IRP was the promulgation of a "rule" under the APA and, therefore, should have gone through proper rule-making procedures, rather than having been adopted through adjudication. *See* RCW 34.05.310-.350; former RCW 34.05.356 (1998); RCW 34.05.360-.395. Under Washington's APA, promulgation of a rule requires the agency to engage in certain specified procedures, such as publishing the proposed rule, giving notice of a public hearing, providing a precise explanatory statement, and maintaining a rule-making file. *Id.* None of these procedures were complied with in this case.

The "remedy when an agency has made a decision which should have been made after engaging in rule-making procedures is invalidation of the action." *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 399-400, 932 P.2d 139 (1997); RCW 34.05.570(2)(c). However, it is axiomatic that "[f]or rule-making procedures to apply, an agency action or inaction must fall into the APA definition of a rule." *Failor's Pharmacy v. Dep't of Soc. & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994).

For an agency policy to qualify as a "rule" under the APA, two elements are required by statute:

> "Rule" means any agency order, directive, or regulation of general applicability (a) the violation of which subjects a

person to a penalty or administrative sanction; (b) which establishes, alters, or revokes any procedure, practice, or requirement relating to agency hearings; (c) which establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law; (d) which establishes, alters, or revokes any qualifications or standards for the issuance, suspension, or revocation of licenses to pursue any commercial activity, trade, or profession; or (e) which establishes, alters, or revokes any mandatory standards for any product or material which must be met before distribution or sale.

RCW 34.05.010(16).

■■ Budget contends "there is no real dispute that the 'total purchases standard' adopted by the Department of Licensing (DOL) and applied to Budget . . . is a rule." Suppl. Br. of Budget Rent A Car Corp. at 1. Specifically, Budget argues that DOL's "order" is one of "general applicability . . . that establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law." Suppl. Br. of Budget Rent A Car Corp. at 4; *see also McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 12 P.3d 144 (2000). The Department disagrees, contending that "the Department did not create any new standard, formula or requirement, but simply applied and interpreted the . . . IRP." Suppl. Br. of State of Wash. Dep't of Licensing at 4. We agree. DOL was simply stating its interpretation of the statutory phrase "total number of passenger cars in the fleet," not creating a rule.

This conclusion is supported by our recent decision in *McGee*, 142 Wn.2d 316, and that case's discussion of our earlier decision in *Failor's Pharmacy*, 125 Wn.2d at 497. In *McGee*, we addressed the question of whether the Department of Social and Health Services (DSHS) invalidly established a "rule" by adopting a two tiered reimbursement scheme for congregate care facilities (CCF), which care for mentally ill wards of the State. *McGee*, 142 Wn.2d at 321. The regulation guiding DSHS in how it should reimburse

CCFs was broad, stating only that the rates would be established by the Department. The sole statutory requirement was that the rates be "reasonable." RCW 74.08.045; *see also McGee*, 142 Wn.2d at 327.

The principal question posed in *McGee*, particularly at the Court of Appeals level, was whether *Failor's Pharmacy*, 125 Wn.2d at 497, was applicable to *McGee's* facts. In *Failor's Pharmacy*, we invalidated a two tiered reimbursement scheme for pharmacies filling Medicaid prescriptions. The DSHS rule provided a two factor process for establishing reimbursement rates for pharmacies. Rates were to be calculated on the basis of " '(1) actual or estimated cost for pharmacies to acquire drug ingredients, and (2) a dispensing fee.' " *McGee*, 142 Wn.2d at 322 (quoting *Failor's Pharmacy*, 125 Wn.2d at 491). "In administering this Medicaid program, however, [DSHS] used a multitiered reimbursement system based on the number of prescriptions filled annually," but failed to adopt a rule in accordance. *Id.* We held that DSHS had "functionally added a third requirement to the two requirements set out in the . . . regulations, and thus had improperly established, altered, or revoked a qualification for the enjoyment of a benefit." *Id.* at 323.

The Court of Appeals in *McGee* distinguished *Failor's Pharmacy*, determining that DSHS had not established a rule by adopting its reimbursement scheme for CCFs. We described the Court of Appeals' decision:

> The Court of Appeals reasoned that since there were no factors beyond "reasonable" laid out for the Department to use by statute or by rule in determining the payment rates offered to congregate care facilities, the Department had not changed any qualifications for benefits in adopting the tiered system.

*Id.* at 323. We ultimately affirmed the Court of Appeals on a "simpler" statutory basis, but noted that "the Court of Appeals' analysis of *Failor's* and the APA is reasonable." *Id.*

Much like in *McGee*, in this case there were no additional requirements added to the IRP by the Department. The requirement under the IRP is that a percentage of revenue

generated in a particular state be applied to "the total of all passenger cars in the fleet." DOL, by giving its interpretation of the phrase "total . . . fleet," cannot reasonably be said to have "establishe[d], alter[ed], or revoke[d] any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law." RCW 34.05.010(16). The requirement arose from the terms of the IRP, not by action of DOL.

Budget's lone argument in favor of a contrary position is that because there was testimony at the administrative hearing that other states may be interpreting the IRP differently, and not using the "total purchases" manner of fleet calculation, DOL either "altered" or "established" a new requirement under the IRP. Suppl. Br. of Budget Rent A Car Corp. at 5. We find this argument wholly unpersuasive. Budget's argument focuses on its expectations and the fact that because it, and perhaps some other states, disagree with the DOL's interpretation of the IRP, DOL created a new requirement under the IRP. Without a prior differing interpretation of the IRP from DOL, Budget's expectations are irrelevant.

In deciding this case, we are not unmindful of the consequences were we to adopt a very broad interpretation of "rule" (in line with Budget's argument), and the fact that it would all but eliminate the ability of agencies to act in any manner during the course of an adjudication. The simplest and most rudimentary interpretation of a statute or regulation would require an agency to go through formal rule-making procedures. While it is true that the APA is designed to provide "greater public and legislative access to administrative decision making," RCW 34.05.001, we believe it is equally true that the APA's provisions were not designed to serve as the straitjacket of administrative action.

## II

In addition to invalidating DOL's "total purchases" formula because DOL failed to engage in rule making, the

Court of Appeals also determined that the Department's manner of computing Budget's rental fleet size is "inconsistent with the clear terms of the IRP." *Budget Rent A Car*, 100 Wn. App. at 388. The Department contests this determination. Accordingly, we must next address whether "[t]he agency has erroneously interpreted or applied the law." RCW 34.05.570(3)(d).

As previously noted, article XI, section 1116 of the IRP sets forth a two step process to determine how many vehicles should be registered in a particular state:

- First, divide the revenue obtained for the preceding year from rental operations in a single state by the total revenue of the company in all states;

- Second, take the resulting percentage and multiply it by the *"total number of passenger cars in the fleet"* and that number "shall be the number of rental passenger cars that shall be fully registered in the jurisdiction."

The Department argues that the phrase "total number of passenger cars in the fleet" includes the total of all vehicles purchased during the assessment year (e.g., total purchases) regardless of how many vehicles were for rent at a particular time. Budget, however, contends that the total fleet size is the average number of vehicles owned by Budget that were for rent at a particular point in time. Due to Budget's "turning" of its rental vehicles, a calculation under the Department's standard would result in a far greater number of vehicles being registered in Washington than under Budget's calculation.

■■ "Words in a statute are given their ordinary and common meaning absent a contrary statutory definition." *John H. Sellen Constr. Co. v. Dep't of Revenue*, 87 Wn.2d 878, 882, 558 P.2d 1342 (1976). Courts may resort "to dictionaries to ascertain the common meaning of statutory language." *Id.* at 883. The Director relied upon the dictionary definition of the word "total" in her determination that

the "total purchases" was the appropriate calculation standard under the IRP. Citing to *Black's Law Dictionary*, the Director noted that the "common meaning of the term 'total' is whole, not divided, lacking no part, entire, full, complete, the whole amount." Pet. for Review at 27. According to the Department, this language indicates that every vehicle that has been a part of Budget's fleet should be included in the calculation of its fleet size.

The Department, however, fails to address the word "fleet," which is also included within the IRP provision at issue. The dictionary definition of the term "fleet" is "a group (as of airplanes or trucks) comparable to a fleet of ships," which in turn is defined as "a number of warships under a single command : a naval force." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 868 (1993). The ordinary and common meaning of the phrase "total . . . fleet" indicates that the appropriate calculation is the number of vehicles Budget had under its control at any given time. Indeed, were the Department's interpretation of this phrase reasonable, sunken warships would be considered a part of the Navy's total fleet. Clearly this is not the case.

At most, the statutory phrase "total . . . fleet" is ambiguous in this context. An ambiguity arises when a term is fairly susceptible to two or more reasonable interpretations. *Schelinski v. Midwest Mut. Ins. Co.*, 71 Wn. App. 783, 787, 863 P.2d 564 (1993).[4] When construing ambiguous statutory language, this Court's goal is to carry out the intent of the Legislature. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). When determining intent, this Court interprets the language at issue in the context of the entire statute. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 778, 903 P.2d 443 (1995).

---

[4] The Department's Assistant Administrator, Mr. Downey, so much as conceded this point:

Q: And [Budget's way of calculating the total number of cars in the fleet] is different than your interpretation but it is a reasonable interpretation of the phrase. Would you agree with that?

A: It would not be my interpretation, but I can see where you would get it.

Administrative R. at 635-36.

As a general matter, when statutory language is ambiguous, courts give some deference to the agency's interpretation, if the law being interpreted is within the agency's expertise. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627-28, 869 P.2d 1034 (1994). But an " 'administrative determination will not be accorded deference if the agency's interpretation conflicts with the relevant statute.' " *Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n*, 133 Wn.2d 229, 241, 943 P.2d 1358 (1997) (quoting *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 815, 828 P.2d 549 (1992)). This deference to administrative findings is set against the rule that courts strictly interpret ambiguities in statutes imposing taxes in favor of the taxpayer. *Sacred Heart Med. Ctr. v. Dep't of Revenue*, 88 Wn. App. 632, 636-37, 946 P.2d 409 (1997).

Legislative intent, gleaned from the language and purpose of the IRP, leans against the Department's interpretation. The Director of the DOL recognized that the "IRP was initially conceived and drafted in the early 1970s as an equitable way to apportion license fees among the states and to provide for reciprocity for commercial and rental fleet vehicles." Pet. for Review at A15. DOL's interpretation of the phrase "total number of passenger cars in the fleet" greatly detracts from the equitable nature of the IRP. By utilizing a total purchases standard there will be double counting. For instance, if Budget "turns" its vehicles two times a year it will have, under DOL's standard, a fleet size two times larger than the number of vehicles Budget has as a part of its fleet at any given time.

Furthermore, contrary to the position taken by the Director of DOL, the IRP did signify a departure from the traditional "[t]ransactional focus" of Washington vehicle tax law. DOL Final Order at 1.3. The IRP, by focusing on revenues in its determination of apportionment, and thereby creating a system whereby nonrevenue producing vehicles are not factored into apportionment, moves rental vehicles under the IRP away from traditional Washington

vehicle tax law. Indeed, in 1992, the Legislature specifically exempted rental vehicles from the Motor Vehicle Excise Tax and instead imposed a sales tax on each rental transaction originating in Washington, regardless of where the vehicle is registered. *See* former RCW 82.44.023 (1992), *repealed by* LAWS OF 2000, ch. 1, § 3; former RCW 82.08.020 (1992).

This is not to say, however, that we believe Budget's interpretation is the most reasonable reading of the IRP. While there are no cases dealing with the provision of the IRP at issue here, there was testimony given at the administrative hearing regarding another meaning of the phrase "total . . . fleet." Under the "highest fleet" or North Carolina system, utilized by Hertz Rent-a-Car, Administrative R. at 418-24, 636-45, 729-44, the number of cars in the "total . . . fleet" is the highest number of vehicles in the fleet at any given time during the course of the year, rather than the average number of cars. This results in a number higher than that obtained under Budget's "average fleet size," but considerably less than under the Department's "total purchases" calculation. Indeed, the ordinary and common meaning of the words "total" and "fleet" when considered on a yearly basis, suggests that the Legislature intended that the vehicle registration requirement be calculated using the largest number of vehicles offered for rental during the preceding year.

We believe this interpretation of the phrase "total . . . fleet" best reflects legislative intent to provide an equitable way to apportion fees, particularly since apportionment is predicated on revenue from rentals under the IRP.[5]

---

[5] Budget also argues that the Department should be estopped from applying its "total purchases" standard against Budget. The elements of estoppel are: " '(1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.' " *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 407, 722 P.2d 787 (1986) (quoting *Harbor Air Serv., Inc. v. Bd. of Tax Appeals*, 88 Wn.2d 359, 366-67, 560 P.2d 1145 (1977)). As the Department correctly notes, Budget's estoppel argument falls on the simplest of grounds. The Department never made a representation to Budget inconsistent with their later claim that the "total purchases" standard was the proper way to calculate the size of Budget's fleet.

## CONCLUSION

We hold that the Department's adoption of the "total purchases" standard during the course of an adjudication was not the promulgation of a "rule" under the APA. We further hold that the Department's interpretation of the IRP relating to the calculation of rental car fleet size is erroneous as a matter of law. Finally, we hold that the phrase "total . . . fleet" means the largest number of vehicles offered for rental at any given time during the tax year. We remand for proceedings not inconsistent with this opinion.

SMITH, JOHNSON, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

SANDERS, J. (concurring in part, dissenting in part) — I agree the Department of Licensing erroneously interpreted the phrase "total . . . fleet" to include the total number of all vehicles purchased during the assessment year. However, I disagree with the majority that the highest number of cars available for rent at any point during the preceding year is the proper measure of what constitutes a rental-car company's total fleet. Rather, the better approach is to measure the total fleet by the average number of cars available for rent in the preceding year.

The majority's rationale to choose the highest number as the "total . . . fleet" is unpersuasive. While it is true the record shows one other member jurisdiction, North Carolina, and one other rental-car company operating in Washington, Hertz Rent-a-Car, employ the highest-number approach, the majority neglects to acknowledge the same record also evidences most states and most rental-car companies use the average-number approach. Br. of Appellant at 7; Administrative R. (AR) at 418-22, 150, 187, 117-120. In other words, if we are to rely on the administrative record as justification to choose one approach over another, that record provides far greater support to adopt

the average-number approach than the highest-number approach.

The majority's use of the highest-number approach also contradicts the well-established canon of statutory construction that ambiguous revenue-generating statutes "are construed most strongly against the government and in favor of the taxpayer." *See Dep't of Revenue v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973). Although the majority recognizes this canon of construction, it fails to apply it. *See* majority at 901.

The International Registration Plan (IRP) is a revenue-generating statute. *See, e.g.*, RCW 46.87.050, .060. It is designed to equitably apportion license revenue among member states based on the extent to which a rental fleet uses each jurisdiction's roads and highways. *See* IRP § 102, *reprinted in* AR at 255. With respect to interstate trucks, for example, this equitable apportionment of license fees is achieved by referring to the detailed mileage records truckers must maintain. *See* IRP § 300, *reprinted in* AR at 267.

Due to circumstances of the industry, however, this approach is not feasible for rental cars. *See* IRP § 1116 cmt., *reprinted in* AR at 284. Instead, the only feasible method to make the same equitable apportionment of revenue from rental-car registrations is to use the percentage of revenue as a proxy for the wear and tear of a jurisdiction's roads and highways. *See Budget Rent A Car Corp. v. Dep't of Licensing*, 100 Wn. App. 381, 389, 997 P.2d 420, *review granted*, 142 Wn.2d 1007, 16 P.3d 1263 (2000); IRP § 1116 cmt., *reprinted in* AR at 284. As the majority sets forth, to determine the number of cars a company must register in a particular state the percentage of revenue generated in that jurisdiction in the preceding year is multiplied by the total fleet size in the preceding year. *See* majority at 922-23; IRP § 1116, *reprinted in* AR at 284. Mathematically, the larger the fleet size, the larger the number of cars that must be registered.

Thus, from the standpoint of a member state seeking to generate revenue, the larger the fleet size the better. This is

because the formula set forth in IRP § 1116 dictates the *minimum* number of cars a rental company must register in each member jurisdiction where it operates:

> To determine the percentage of total fleet vehicles that *shall be registered in a jurisdiction*, divide the gross revenue received in the preceding year for use of such rental vehicles arising from passenger car rental transactions occurring in the jurisdiction by the total gross revenue received in the preceding year for the use of such rental vehicles arising from passenger car rental transactions occurring in all jurisdictions in which such vehicles are operated. The resulting percentage shall be applied to the total number of passenger cars in the fleet and that figure *shall be the number of rental passenger cars that shall be fully registered in the jurisdiction.*

AR at 284 (emphasis added). The higher the minimum number of registrations to which a jurisdiction is entitled, the greater the guaranteed revenue for that jurisdiction.

Adherence to the principle that revenue-generating provisions are construed most strongly against the government would lead to the conclusion we should adopt the average-number approach advocated by Budget and used by most jurisdictions and rental-car companies, if not the lowest-number approach.

Furthermore, the majority's decision to apply the highest-number approach counters the underlying premises of the IRP—to promote uniformity, proportionality, and equitability among member jurisdictions. *See Budget*, 100 Wn. App. at 387; *cf.* IRP § 102; IRP Foreword, *reprinted in* AR at 253, 255. Since the record indicates most jurisdictions rely on the average-number approach, the majority's decision upsets that quest for uniformity.

It also contradicts the goal to distribute proportionally and equitably revenue among the member jurisdictions. Because Washington will employ the highest-number approach, it will receive a disproportionately greater number of registrations than jurisdictions using the average-number approach. Washington will enjoy this benefit not because the wear and tear on our roads and highways is

disproportionately greater than that of other members, but simply because Washington uses a more favorable accounting method. The following hypothetical illustrates this disproportionate distribution:

> Rental-car company X Corp. operates in four U.S. states which are members of the IRP: State 1, State 2, State 3, and State 4. X Corp.'s revenue percentage in each of the four jurisdictions is 25%. State 1 uses the highest-number approach to approximate X Corp.'s total fleet size, while the other three states use the average-number approach.
>
> At the beginning of the preceding year, X Corp. had an actual fleet size of 800 cars. During the summer high-season, its fleet size went up to 1,000 cars. Then, at the end of the preceding year, X Corp.'s fleet size was down to 900 cars. Thus, the fleet size using the highest-number approach is 1,000 cars, while it may be only 900 cars under the average-number approach.
>
> In State 1, X Corp. will therefore have to register 250 cars this year (25% of 1,000). In the remaining three jurisdictions, X Corp. need register only 225 cars (25% of 900). Based solely on the number of registered cars, State 1 is receiving a disproportionate share of revenue.

Lastly, the highest-number approach skews the formula in section 1116 away from being an accurate reflection of a rental fleet's use of a particular jurisdiction's road network. The apportionment of registration fees is intended to compensate for the cost of road wear a rental fleet causes in the jurisdictions in which it operates. *See* IRP § 1116 cmt., *reprinted in* AR at 284. As such, the apportionment to which a jurisdiction is entitled should accurately reflect the amount of use by a rental fleet during the preceding year. The size of a rental fleet fluctuates throughout the year, from season to season. Since the highest-number approach is based on the highest number of cars a rental-car company offered for rent at any point during the preceding year, it does not account for such fluctuations. It therefore overstates a rental fleet's use of the roads and highways by ignoring the fact that for every point in time other than the peak the actual use is less.

The IRP is supposed to "promote and encourage the fullest possible use of the highway system" thereby contributing "to the economic and social development and growth of the jurisdictions." IRP § 102, *reprinted in* AR at 255. The majority's decision to use the highest-number approach stands in contrast to that principle, and construes the IRP against the taxpayer and in favor of the government, exactly the opposite from the applicable rule of law. I therefore dissent.

ALEXANDER, C.J., and IRELAND, J., concur with SANDERS, J.