709 S.E.2d 690

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Appellant,**

v.

**CLUB RIO, d/b/a Club Level, Respondent.**

**No. 4817.**

Court of Appeals of South Carolina.

Submitted March 1, 2011.

Decided April 6, 2011.

Andrew L. Richardson, Caroline H. Raines, Milton G. Kimpson, and Ronald W. Urban, all of Columbia, for Appellant.

PER CURIAM.

The Department of Revenue (Department) moved the Administrative Law Court (ALC) to revoke the liquor by the drink license and beer and wine permit (collectively, the License) of Club Rio, d/b/a Club Level (the Club). After the Club surrendered the License, the ALC dismissed the action, finding it lacked subject matter jurisdiction and the revocation issue was moot. We reverse [1] and remand for consideration of the Department's motion for revocation.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTS

Beginning in 2007, the Club operated a hip-hop dance/night club in Richland County. Located in a mixed business and residential district, the Club was the only business in the immediate vicinity that possessed both a permit to sell beer and wine and a license to sell liquor by the drink on the premises. In August 2008, shortly before the expiration of its License, the Club filed an application with the Department to renew its License.

On September 2, 2008, the Department sent the Club a "Letter to Operate" recognizing the Club had timely filed requests to renew its License and, on the condition that the Club timely requested a contested case hearing, expressly permitting the Club to continue to operate under the License during the pendency of the administrative process. The letter limited the extension of the License to thirty days after the date of the ALC's decision or ninety days after the date of the letter, whichever occurred first, but explained the Club could request additional extensions.

On September 24, 2008, after reviewing protests from the Club's neighbors who opposed renewal of the License, the Department denied the Club's request for renewal. Four days later, the Department advised the Club it had ninety days within which to file a written protest with the Department contesting the denial. On November 26, 2008, the Club requested that the Department extend the provisional License an additional sixty days and filed with the ALC a request for a contested case hearing. The Department responded by issuing a second Letter to Operate.

On February 2, 2009, the Department moved to dismiss the contested case on the basis that the Club had failed to file its contested-case request with the ALC within thirty days of learning of the Department's decision.[2] Although the Club

---

2. Because copies of relevant documents were omitted from the record, the majority of the procedural history recited herein comes from the ALC's final order dated May 6, 2009. The License, the first Letter to Operate, and the documents the Club filed to protest or initiate the contested case do not appear in the record. Consequently, it is impossible to determine whether the Club filed a protest with the Department, as it was instructed to do in the Department's letter of September 28, 2008, or proceeded to seek a contested case hearing before the ALC.

filed a response on February 18, 2009, asking for its delay to be excused for good cause, the ALC granted the Department's motion. Shortly thereafter, the Club requested an extension of the License and requested the ALC stay the effect of its order dismissing the case during the pendency of the Club's appeal to this court.[3] When the Department did not object, the ALC granted the Club's motion, permitting the Club to operate under the License until March 31, 2009.

On March 20, 2009, the Department moved the ALC to enter an emergency suspension of the Club's License because the Club posed a threat to "the public's health, safety, or welfare." The motion indicated the Department sought the suspension "pending a hearing on the merits for the permanent revocation" of the Club's License. The ALC granted the motion and suspended the License. On March 25, 2009, the Department took possession of the Club's copy of its Letter to Operate.[4] The next day, the Club surrendered to the Department its original Letter to Operate, along with a letter from the Club's president stating he did thereby "turn in, release, relinquish, any and all rights and privileges" conferred by its beer and wine permit, its liquor license, and the Letters to Operate.

At the March 31, 2009 hearing on the Department's motion to revoke the Club's License, the Club orally moved the ALC to dismiss the case based upon lack of subject matter jurisdiction and mootness. The ALC entertained arguments on all

However, if the Club failed to file its timely protest with the Department, the Department's denial became a final decision. *See* S.C.Code Ann. §§ 12–60–420(A) & –450(D)(2) (Supp.2010) (outlining procedure for protest of Department decision and providing failure to protest renders decision final). When a protest is not filed with the Department, the ALC must make a finding of good cause for the failure to protest before it can reverse the Department's decision. S.C.Code Ann. § 12–60–510(A)(2) (Supp.2010).

3. It does not appear the Club appealed the ALC's dismissal of its contested case.

4. The record does not indicate when the Department took possession of the License. However, licenses are "the property of the [D]epartment." S.C.Code Ann. § 61–2–140(B) (2009). Because neither party contends that the Club retained the License after the Department retrieved the Letter to Operate, we presume the Department retrieved the License on March 25, 2009, as well.

three motions. After the Club presented its motions, the Department presented evidence that the Club posed a danger to the public health, safety, and welfare as a result of fighting and shooting incidents that occurred both before and after the stay was granted. Several witnesses and members of local law enforcement testified that similar incidents and other criminal activity were commonplace at the Club and that the Club unduly burdened the local police.

On May 6, 2009, the ALC issued its final order granting both of the Club's motions to dismiss. Despite its initial determination that it lacked subject matter jurisdiction, the ALC "out of an abundance of caution" also found the matter was moot, found no exception to the Mootness Doctrine applied, and granted dismissal on that basis as well. The Department appealed. The Club, which was represented by counsel before the ALC but is not represented on appeal, did not file a respondent's brief in this matter.

## STANDARD OF REVIEW

Appellate review of an order by the ALC "must be confined to the record." S.C.Code Ann. § 1–23–610(B) (Supp.2010). Furthermore:

> The court may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.*

## LAW/ANALYSIS

### I. Subject Matter Jurisdiction

The Department first asserts the ALC erred in granting the Club's motion to dismiss based upon lack of subject matter jurisdiction. We agree.

██ "Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'" *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994) (quoting *Bank of Babylon v. Quirk*, 192 Conn. 447, 472 A.2d 21, 22 (1984)).

The ALC "shall preside over all hearings of contested cases . . . involving the departments of the executive branch of government. . . ." S.C.Code Ann. § 1–23–600(A) (Supp.2010). In particular, the ALC has jurisdiction over contested case hearings involving alcoholic beverages. S.C.Code Ann. § 61–2–260 (2009). Furthermore, the Administrative Procedures Act (APA) permits the Department to seek summary suspension of a license pending revocation proceedings "[i]f the [Department] finds that public health, safety or welfare imperatively requires emergency action[ ] and incorporates a finding to that effect in its order. . . ." S.C.Code Ann. § 1–23–370(c) (2005). When a license is suspended or revoked, the holder must surrender it to the Department immediately. S.C.Code Ann. § 61–4–600 (2009).

We reverse the ALC's decision dismissing this matter for lack of subject matter jurisdiction. This matter originated as a contested case filed pursuant to sections 1–23–600 and 61–2–260. However, the ALC dismissed the Club's contested case in its February 18, 2009 order and confirmed in a subsequent order that the February dismissal ended the contested case. The record does not indicate the contested case was in any way revived. Subsequently, the Department commenced an action for summary suspension and revocation of the License under section 1–23–370(c). The Department appealed from the order dismissing the revocation issue.

■ We find the ALC has subject matter jurisdiction over a petition for revocation initiated by the Department even if the license or permit at issue is surrendered after commencement of the revocation proceedings. Subject matter jurisdiction requires only the authority to adjudicate " 'cases of the *general class* to which the proceedings in question belong.' " *Dove*, 314 S.C. at 237–38, 442 S.E.2d at 600 (emphasis supplied). Under Title 61 of the South Carolina Code, which covers Alcohol and Alcoholic Beverages, the Department has the authority to suspend or revoke alcoholic beverage licenses and permits after investigation. S.C.Code Ann. § 61–4–590 (2009). Both Title 61 and the APA agree the ALC has subject matter jurisdiction over contested cases involving the Department. *See* § 1–23–600(A); § 61–2–260. The APA applies the rules for contested cases to license grant, denial, and renewal issues requiring notice and hearing. S.C.Code Ann. § 1–23–370(a) (2005). In another subsection of the same statute, the APA specifies the Department may seek summary suspension of a permit or license. § 1–23–370(c). Consequently, although not articulated in these statutes, it appears the General Assembly intended to empower the ALC to decide disputes relating to the issuance and validity of alcoholic beverage licenses.

In the case at bar, the ALC found that the Club's surrender of its rights under the License effectively deprived the ALC of subject matter jurisdiction over the previously filed revocation proceedings. This reasoning ignores the provisions above. The statutory scheme confers on the ALC subject matter jurisdiction over the Department's contested cases. § 1–23–600(A); § 61–2–260. Furthermore, no provision assigns subject matter jurisdiction over revocation proceedings elsewhere. Accordingly, the ALC erred in dismissing the Department's revocation proceeding for lack of subject matter jurisdiction.

## II. Mootness

■ Next, the Department asserts the ALC erred in granting the Club's motion to dismiss based upon mootness. We agree.

### A. Mootness Doctrine

This court recently examined the Mootness Doctrine:

The court does not concern itself with moot or speculative questions. An appellate court will not pass judgment on moot and academic questions; it will not adjudicate a matter when no actual controversy capable of specific relief exists. A case becomes moot when judgment, if rendered, will have no practical legal effect upon the existing controversy. Mootness also arises when some event occurs making it impossible for the reviewing court to grant effectual relief.

*Sloan v. Greenville Cnty.*, 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct.App.2009) (internal citations and quotation marks omitted).

### B. Revocation of Alcoholic Beverage License

The Department "has sole and exclusive power to issue all licenses, permits, and certificates" authorizing the sale of beer, wine, or liquor. S.C.Code Ann. § 61–2–70 (2009). In addition:

The [D]epartment has jurisdiction to revoke or suspend permits authorizing the sale of beer or wine. The [D]epartment may, on its own initiative ..., revoke or suspend the permit pursuant to the South Carolina Revenue Procedures Act. The decision of the [ALC] is not automatically superseded or stayed by the filing of a petition for judicial review.

S.C.Code Ann. § 61–4–590(A) (2009). However, the Department may not order suspension or revocation until after the South Carolina Law Enforcement Division "has conducted and completed an investigation, and the [D]epartment has made a departmental determination" supporting suspension or revocation. S.C.Code Ann. § 61–4–590(B) (2009).

Statutory grounds for revocation or suspension of a permit authorizing the sale of beer or wine include the permit holder's knowing allowance of "any act, the commission of which tends to create a public nuisance or which constitutes a crime under the laws of this State...." S.C.Code Ann. § 61–4–580 (2009). If, following suspension or revocation, a permit holder either fails to surrender his permit to the Department immediately or continues to offer beer or wine for sale, he is guilty of a misdemeanor and "must be fined not less than twenty dollars nor more than one hundred dollars or imprisoned for not less than ten days nor more than thirty days, or both, in

the discretion of the court." S.C.Code Ann. §§ 61–4–600 & –610 (2009).

A person seeking authorization to sell beer or wine must submit an application to the Department stating, under oath, "whether [he] or an owner of the business has been involved in the sale of alcoholic liquors, beer, or wine in this or another state and whether he has had a license or permit suspended or revoked." S.C.Code Ann. § 61–2–90(4) (2009). Suspension or revocation of a license affects the ability of the holder and his immediate family to secure a new license or permit or maintain other existing permits:

(D) When a license or permit is suspended or revoked, no partner or person with a financial interest in the business may be issued a license or permit for the premises concerned. No person within the second degree of kinship to a person whose license or permit is suspended or revoked may be issued a license or permit for the premises concerned for a period of one year after the date of suspension or revocation.

(E) A person whose license or permit has been suspended or revoked for a particular premises is not eligible to receive an additional new license or permit at another location during the period the suspension or revocation is in effect, and the [D]epartment may suspend or revoke all other licenses or permits held by the person if the suspended or revoked premises is within close proximity.

S.C.Code Ann. § 61–2–140 (2009).

We reverse the ALC's finding of mootness because the Club's surrender of the License prior to the hearing did not moot the revocation issue. *See Sloan*, 380 S.C. at 535, 670 S.E.2d at 667 (holding an issue is moot "when judgment, if rendered, will have no practical legal effect upon the existing controversy . . . [or] when some event occurs making it impossible for the reviewing court to grant effectual relief"). The Department sought to revoke the Club's License because the Club's continued operation threatened "the public's health, safety, or welfare." After the ALC granted the Department's motion for temporary suspension, section 61–4–600 required the Club to surrender its License to the Department. Accord-

ingly, the Club's surrender of the License prior to the hearing merely amounted to compliance with the statute.

This issue was not moot because a judgment in the revocation action would have had a practical, long-term legal effect on the existing controversy between the Department and the Club. In ruling otherwise, the ALC considered only the short-term differences in consequences between suspension, which was already in effect, and revocation. Suspension of a license is effective for a predetermined period of time, after which, absent an intervening event like revocation, the licensee may resume operating under his license. S.C.Code Ann. § 1–23–370(c) (2005) (providing for summary suspension "pending proceedings for revocation or other action"). As long as it is in effect, suspension carries many of the same consequences as revocation. Whether the license is suspended or revoked, the holder must surrender it to the Department immediately and cease selling the products covered by it. §§ 61–4–600 & –610. Furthermore, both suspension and revocation affect the Department's ability to issue a new license to the holder of a suspended or revoked license, as well as to his close relatives and business associates. § 61–2–140(D) & (E). To the extent the ALC's revocation of the License would have protected the health, safety, or welfare of the public immediately by preventing the Club from selling alcoholic beverages, the temporary suspension of the License achieved the same result.[5]

Nevertheless, revocation carries some consequences suspension does not, and it is these consequences the ALC over-

---

5. However, it appears neither the License's expiration nor the Club's relinquishment affected the validity of the License for the purposes of suspension:

> [T]here is some question as to whether the period of a license suspension can extend beyond the expiration of forfeiture of the suspended license. When faced with similar issues in licensing matter, courts have generally held that a license suspension is not restricted to the duration of the license itself, but rather extends to the licensee so as to preclude him from exercising the privilege in question for the duration of the suspension period, regardless of his particular licensure status. Therefore, it would appear that a suspension imposed upon a licensee by the Department extends for the full duration of the suspension and may not be cut short by the expiration or surrender of the underlying license.

John D. Geathers & Justin R. Werner, *The Regulation of Alcoholic Beverages in South Carolina* 274 (S.C. Bar 2007).

looked. Each license authorizes alcoholic beverage sales at a specific location and is not transferable to another location. S.C.Code Ann. § 61–2–140(C) (2009). When a license is suspended, the owner and his close relatives and business associates are ineligible to receive a new license for that location for a period of one year after suspension. § 61–2–140(D). The owner is ineligible to receive a new license for a different location only during the period the suspension is in effect. § 61–2–140(E). By contrast, when a license is revoked, the Department is prohibited from issuing the owner[6] a new beer and wine license for two years from the date of revocation. S.C.Code Ann. § 61–4–520(3) (2009). For liquor by the drink, the prohibition period lasts five years. S.C.Code Ann. § 61–6–110 (2009).

The ALC's dismissal of this matter improperly allowed the Club's owner to avoid being banned from receiving a new beer and wine permit for two years and a new liquor license for five years. Under section 61–2–140(D), suspension of the License prevented the Club's owner and his close relatives and business associates from receiving a new license for the Club Level location for one year. However, under section 61–2–140(E), the owner could secure a new license for another location as soon as the suspension period ended. Revocation of the License would have prohibited the Department from issuing another license or permit to the owner of the Club for a period of two years for beer and wine and five years for liquor by the drink. *See* § 61–4–520(3) (beer and wine); § 61–6–110 (liquor by the drink). For this reason, revocation of the License would have had a practical effect on the controversy between the Club and the Department by protecting the public's future health, safety, or welfare in a way relinquishment did not. Consequently, the ALC erred in finding this issue was moot.

Furthermore, we are concerned about the ramifications of allowing the holder of a license or permit subject to revocation to avoid consequences merely by surrendering his license. As discussed at length above, the Department not only evaluates applications for alcoholic beverage licenses and permits, but it also monitors times and locations of suspended and revoked

---

**6.** The provisions of Title 61, Chapter 6, apply only to the owner of the license and not to his close relatives or business associates.

licenses. Under the ALC's reasoning, a licenseholder whose actions otherwise merit revocation may evade the two– and five–year prohibitions on new licenses by surrendering his current license while revocation proceedings are pending. By forcing the revocation proceedings to end before an adjudication on their merits, he may then apply to the Department for a new license without disclosing a revocation on his application. His success invites others in similar situations to do the same, thereby complicating the Department's efforts to ensure it issues new licenses and permits only to applicants who will be good stewards of their authority.

## CONCLUSION

We find that when the Department has timely moved for revocation of an alcoholic beverage license, the surrender of that license does not deprive the ALC of subject matter jurisdiction over the revocation proceedings. We reverse the ALC's finding that it lacked subject matter jurisdiction.

In addition, we find the prospective collateral consequences of revocation prevented the Club's relinquishment of its License from mooting the revocation issue. Therefore, we also reverse the ALC's finding of mootness. For the foregoing reasons, we remand this matter to the ALC for consideration of the Department's revocation action.

Accordingly, this matter is

**REVERSED AND REMANDED.**

FEW, C.J., THOMAS, J., and CURETON, A.J., concur.