743 S.E.2d 786

AMISUB OF SOUTH CAROLINA, INC., d/b/a
Piedmont Medical Center, Respondent,

v.

SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVI-
RONMENTAL CONTROL; Charlotte–Mecklenburg Hospital
Authority, d/b/a Carolinas Healthcare System; and Carolinas
Physicians Network, Inc., Defendants,

of whom South Carolina Department of Health and
Environmental Control is the Petitioner,

and

Charlotte–Mecklenburg Hospital Authority, d/b/a Carolinas
Healthcare System; and Carolinas Physicians
Network, Inc. are Respondents.

Appellate Case No. 2011–193828.

No. 27257.

Supreme Court of South Carolina.

Heard Jan. 10, 2013.

Decided May 29, 2013.

Ashley Caroline Biggers, of Columbia, for Petitioner.

Travis Dayhuff, of Nelson Mullins Riley & Scarborough, of Columbia; James Grant Long, III, Tanya Amber Gee, Jennifer Joan Hollingsworth, and Edward Houseal Bender, all of Nexsen Pruet, of Columbia, for Respondents.

Chief Justice TOAL.

This matter began as a contested case in the administrative law court (ALC) brought by Amisub of South Carolina, Inc., d/b/a Piedmont Medical Center (Piedmont), a hospital in Rock Hill, South Carolina. The dispute arises out of Piedmont's contention that an urgent care center operated by a competitor, Carolinas Physicians Network, Inc. (CPN), was required to have a Certificate of Need (CON) or a Non–Applicability Determination (NAD) from the South Carolina Department of Health and Environmental Control (DHEC). CPN is a wholly owned subsidiary of Charlotte–Mecklenburg Hospital Authority, d/b/a Carolinas Healthcare System (CHS). The ALC granted summary judgment to CHS and CPN on the basis the urgent care center was a licensed private physician's office and, thus, exempt from CON review as a matter of law. The Court of Appeals reversed, finding summary judgment was premature, and remanded to allow Piedmont the opportunity to conduct discovery. The Court of Appeals rejected DHEC's argument that the ALC did not have subject matter jurisdic-

tion in this case because the agency had issued no staff decision subject to a contested case hearing. *Amisub of S.C., Inc. v. S.C. Dep't of Health & Envtl. Control,* Op. No. 2010–UP–523 (S.C. Ct.App. refiled Apr. 25, 2011). This Court granted DHEC's petition for a writ of certiorari as to the issue of jurisdiction. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

### I. Development of Medical Center

CPN is a nonprofit corporation organized under the laws of North Carolina. It owns and operates physicians' offices in North Carolina and South Carolina. CPN is a wholly owned subsidiary of CHS, a nonprofit health care system based in Charlotte, North Carolina.

On October 17, 2007, CHS wrote to DHEC and requested confirmation that its proposed construction of a medical office building in Fort Mill, South Carolina did not require CON review. A DHEC staff member responded on October 26, 2007 and confirmed that the "project does not require Certificate of Need review because it is an expenditure by a health care facility for a non-medical project" as provided in S.C.Code Ann. Regs. 61–15 § 104(2)(f) (Supp.2008). The letter's subject line referenced this decision as E–07–125/Construction of a medical office building/Carolinas Medical Center—Fort Mill Office Plaza/Fort Mill, South Carolina.

Upon learning of DHEC's grant of a written exemption for the construction project, Piedmont filed a request for final review (RFR) by the DHEC Board of E–07–125 (the exemption decision) in 2007. The DHEC Board declined review on the basis the request was untimely. Piedmont then requested a contested case hearing. The ALC ruled Piedmont's challenge was not timely filed, and the matter as to E–07–125 was dismissed in 2008. *Amisub of S.C., Inc. v. S.C. Dep't of Health & Envtl. Control,* 2008 WL 4879672 (ALC order filed Oct. 3, 2008). Piedmont did not further challenge this ruling.

According to Piedmont, CHS thereafter had the medical office building constructed in Fort Mill at a cost of approximately $13.9 million. CPN opened its urgent care center there on January 12, 2009. CPN employed two family medi-

cine physicians, two nurses, and other personnel to staff the center. The practitioners provide primary care, including initial diagnosis and treatment, from 8:00 a.m. to 8:00 p.m. seven days a week. Patients are not required to have appointments, and they do not stay overnight at the facility. CPN reportedly owns the center and the personal property, including the equipment, used to treat the patients.

Prior to the opening of the urgent care center, Piedmont's counsel met with DHEC staff on January 5, 2009, regarding the plan to establish the center at the Fort Mill medical office building. On January 16, 2009, Piedmont's counsel sent a follow-up letter to DHEC requesting that DHEC "take immediate steps to require CHS's submission of either a non-applicability request or a CON application" for the urgent care center. Piedmont's counsel asserted CHS's actions were contrary to its previous written assurance to DHEC that it would not open an urgent care center without first obtaining a CON or a NAD, citing a 2007 letter from CHS to DHEC.[1] Counsel further asserted that expenditures by a health care facility in excess of $2 million required a CON and that, while the offices of licensed private practitioners generally are exempt, that exemption does not apply to the urgent care center because, "upon information and belief, the physicians who will staff the center are employed by a public health care facility (or its affiliate) . . . ."

On January 28, 2009, Piedmont's counsel, Daniel Westbrook, spoke with Beverly Patterson, Director of DHEC's CON program, about the urgent care center and was informed by Patterson that "DHEC had not decided to take any action to require Carolinas [CHS] to apply for a Non-applicability Determination or Certificate of Need for its Ft. Mill urgent care center." Counsel prepared an affidavit dated January 30, 2009 summarizing this telephone conversation. Counsel add-

---

1. Bennett Thompson, a CHS Management Associate, made the statement in a letter to DHEC dated December 19, 2007, in which he acknowledged CHS's receipt of DHEC's grant of a written exemption for the construction of the medical building. According to an affidavit dated April 3, 2009 of Dan Wiens, CPN's Senior Vice President for Operations, CPN later determined the CON Act was not applicable to the urgent care center because it was the office of a licensed private practitioner (which did not require a written exemption), so it did not seek or receive a formal exemption determination from DHEC.

ed, "As of the date of this affidavit, I have not received a writing from DHEC memorializing its decision to not take any action against Carolinas [CHS] for the opening of its urgent care center."

On February 2, 2009, Piedmont's counsel filed with the Clerk of the DHEC Board a written request for final review, which sought the Board's review of "DHEC's staff decision" not to require a CON or a NAD for the opening of the urgent care center.[2] Counsel attached his affidavit dated January 30, 2009 that summarized his telephone conversation with the Director of DHEC's CON program. Counsel asked the Board (1) to issue a cease and desist order prohibiting further operation of the center until there was a final decision on a CON application or a NAD request, and (2) to require CHS to file a CON application or a NAD request prior to reopening the center.

The Clerk of the DHEC Board responded to Piedmont's counsel on February 4, 2009, declining the request for review. The Clerk noted the request was filed 464 days after DHEC's decision in the matter was mailed to the applicant on October 26, 2007, and any request for review was due within fifteen days after notice of the decision. The subject line of the letter referenced "**Docket No. 09–RFR–06**—Staff decision dated October 26, 2007, (mailed 1/7/2009), to approve an exemption (E–07–125) for an expenditure by health care facility for a non-medical project." Thus, the letter referenced DHEC's earlier determination that the construction of the medical office *building* was exempt from CON requirements, rather than Piedmont's question regarding the opening of the urgent care center.

---

2. Counsel stated, "Piedmont challenges DHEC staff's decision on the grounds that: 1) it violates S.C.Code Ann. § 44–7–160(3) and S.C. Code Ann. Reg[s]. 61–15 § 102(1)(c) which requires a person or health care facility to obtain a CON before undertaking an expenditure on behalf of a health care facility in excess of $2 million; 2) it violates S.C. Code Ann. Reg[s]. 61–15 § 102(1)(3) which requires an applicant to request a formal determination by the Department of the applicability of the CON requirements when any question exists; 3) the exemption to CON review found in S.C. Code Ann. Reg[s]. [61–15] § 104 do not apply to [CHS's] construction of an urgent care center; 4) it deprives Piedmont of due process under the South Carolina and United States Constitutions; and 5) the staff's decision was arbitrary, capricious, and an abuse of discretion."

Counsel for Piedmont wrote to the Clerk of the Board and acknowledged that any challenge to E–07–125 would be untimely and that Piedmont was not challenging the exemption for the building construction in 2007. Counsel explained, "The DHEC staff decision for which we seek review is the unwritten decision made in January or February 2009 and communicated to me verbally on January 28, 2009, as described in my affidavit of January 30, 2009. . . ." Counsel asserted DHEC's determination that the center was a private practitioner's office and therefore not subject to CON review was in error because the physicians there were employed by a health care facility. Counsel asked for clarification as to whether the letter of February 4, 2009 represented a final decision of the DHEC Board to deny Piedmont's request for review.

Thereafter, the Clerk of the Board notified Piedmont that the DHEC Board had met on February 12, 2009 and had declined to conduct a final review conference in this matter.

## II. Contested Case Hearing

On March 5, 2009, Piedmont filed a request with the ALC for a contested case hearing, challenging DHEC's failure to require CHS to apply for and obtain a CON or a NAD for the urgent care center. CHS and DHEC were named as respondents in the filing. Counsel argued a CON or a NAD was required because the urgent care center was established by or on behalf of a health care facility, i.e., CHS. Counsel for Piedmont attached his January 30, 2009 affidavit regarding his conversation with DHEC staff, along with Piedmont's request for review and the notice from the DHEC Board declining review.

CPN (which was added as a respondent by consent of the parties) and CHS moved for a dismissal or for summary judgment.[3] At the hearing before the ALC on April 16, 2009, Piedmont asserted no discovery had been completed and argued the center was not entitled to classification as a private physician's office because it was owned and operated by a

---

3. CPN's motion requested a dismissal based on a lack of jurisdiction (CPN asserted there was no DHEC decision giving rise to a contested case), and it alternatively moved for summary judgment on the basis the urgent care center was exempt from CON requirements as a private physician's office.

health care facility. Specifically, Piedmont asserted the center[4] is marketed as a CHS facility, not as a physicians' practice, and that CHS, which originally expended the funds to construct the medical office building, controls the urgent care center through its wholly owned subsidiary, CPN. Piedmont contended further discovery was needed to determine the actual relationship of the various entities and the true nature of the operations at the urgent care center.[5]

DHEC, in contrast, argued that a licensed private practitioner's office is exempt from CON requirements and no written exemption is required from DHEC; that the CON requirements apply to health care facilities such as hospitals, but urgent care centers are not included within that statutory definition; that the center challenged here is a private physician's office and therefore exempt as a matter of law; and discovery was not needed as ownership of the center was not a determinative factor since no restrictions as to ownership appear in any of the provisions providing an exemption from CON review for the office of a licensed private practitioner.[6]

### III. ALC's Grant of Summary Judgment

The ALC found summary judgment was appropriate because the urgent care center qualifies as the office of a licensed private practitioner and is therefore exempt from CON review as a matter of law. The ALC observed that "[t]he essence of Piedmont's argument is that the physician office exemption does not apply to physician offices owned by

---

4. It is variously referred to in the Appendix as "Carolinas Healthcare Urgent Care Center–Fort Mill" and as "Carolinas Medical Center–Fort Mill Urgent Care."

5. Piedmont alleges CHS subsequently sold its ownership in the medical office building, and CPN then leased the office space from HR of Carolinas, L.L.C.

6. In an affidavit dated April 3, 2009, DHEC's CON Director, Beverly Brandt (formerly Patterson), stated an "urgent care center" is not defined in the CON Act or associated regulations. Brandt further stated "[t]he identity of the owner of the physician's office practice is not relevant to whether this exemption applies. If the physician's office practice operates under the name of 'urgent care center' or a similar name, but still retains the nature of simply a physician's office practice, then it qualifies for this exemption."

a health care facility." However, the ALC stated this issue does not create a question of fact. The ALC observed that neither the CON Act enacted by the South Carolina General Assembly nor any associated regulations place any restriction on the type of private physician's office that is entitled to receive the exemption from CON review. The ALC concluded the ownership of the center and whether CPN is a health care facility had no bearing on whether the urgent care center is a private physician's office, so further discovery was not necessary on this point. Consequently, the ALC granted summary judgment in favor of CPN and CHS.

## IV. Reversal by Court of Appeals

Piedmont appealed to the Court of Appeals, which reversed and remanded. *Amisub of S. C., Inc. v. S.C. Dep't of Health & Envtl. Control,* Op. No. 2010–UP523 (S.C. Ct.App. refiled Apr. 25, 2011). The court determined the ALC "erred in finding that it could resolve the case as a matter of law by granting summary judgment without affording Piedmont the opportunity to conduct discovery." *Id.,* slip op. at 2. The court also stated it "disagree[d] with [DHEC's] subject matter jurisdiction argument." *Id.* at 3. The court noted DHEC "sought reconsideration of [the] initial opinion because it alleged there was no decision rendered by [DHEC] in this matter."[7] *Id.* However, the court found "[t]he record indicates that there was a decision by [DHEC] to exempt the Center from review." *Id.* This Court granted certiorari as to DHEC's arguments regarding subject matter jurisdiction.

## STANDARD OF REVIEW

The Administrative Procedures Act (APA)[8] governs appeals from the ALC. *Murphy v. S.C. Dep't of Health & Envtl. Control,* 396 S.C. 633, 723 S.E.2d 191 (2012). Under section 1–23–610(B) of the APA, an appellate court may reverse or

---

7. Although the ALC questioned the lack of a written decision by DHEC at the contested case hearing, the issue was not extensively discussed at that time and the ALC's order does not specifically address this point. However, since the ALC ruled on the merits of Piedmont's claim, it is reasonably inferable that the ALC determined it had jurisdiction.

8. Some of the APA statutes were amended after this proceeding, but the changes do not affect the outcome here.

modify the decision of the ALC if the appellant's substantial rights have been prejudiced because the decision is (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by an error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. S.C.Code Ann. § 1–23–610(B) (Supp.2012); *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control,* Op. No. 27065 (S.C. Sup.Ct. refiled Feb. 27, 2013) (Shearouse Adv. Sh. No. 9 at 28); *Murphy,* 396 S.C. at 639, 723 S.E.2d at 194.

## LAW/ANALYSIS

On certiorari, DHEC argues the Court of Appeals erred in finding the ALC had subject matter jurisdiction over this dispute. Specifically, DHEC asserts it did not issue a staff decision requiring notice and an opportunity for a hearing in a contested case proceeding before the ALC.

### I. ALC's Jurisdiction in Contested Cases

■ The General Assembly has the authority to limit the subject matter jurisdiction of a court it has created; therefore, it can prescribe the parameters of the ALC's powers. *Howard v. S.C. Dep't of Corrections,* 399 S.C. 618, 733 S.E.2d 211 (2012); *see also* S.C.Code Ann. § 1–23–500 (2005 & Supp.2012) (creating an Administrative Law Judge Division and subsequently renaming it the ALC); *S.C. Dep't of Consumer Affairs v. Foreclosure Specialists,* 390 S.C. 182, 700 S.E.2d 468 (Ct.App.2010) (observing the ALC does not have the authority to exceed its statutorily granted powers).

By statute, the General Assembly has authorized the ALC to preside over "contested case" proceedings. S.C.Code Ann § 1–23–600(A) (Supp.2012); *see also id.* § 44–1–60(F)(2) (allowing applicants, permittees, licensees, or affected persons to file a request for a contested case hearing with the ALC in accordance with the APA after receiving a written decision from DHEC); *S.C. Dep't of Rev. v. Club Rio,* 392 S.C. 636, 642, 709 S.E.2d 690, 694 (Ct.App.2011) ("The statutory scheme

confers on the ALC subject matter jurisdiction over [DHEC's] contested cases.").

A "contested case" is defined in the APA as "a proceeding including, but not restricted to, ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are required by law or by Article I, Section 22, Constitution of the State of South Carolina, 1895,[9] to be determined by an agency or the [ALC] after an opportunity for hearing." S.C.Code Ann. § 1–23–505(3) (Supp.2012) (defining a "contested case" in ALC matters); *see also id.* § 1–23–320(A) (stating that, in a contested case, all parties must be afforded an opportunity for a hearing after proper notice). A "license" in this context "includes the whole or part of any agency permit, franchise, certificate, approval, registration, charter, or similar form of permission *required by law....*" *Id.* § 1–23–505(4) (emphasis added).

A brief overview of the specific provisions governing CONs, NADs, and exemptions will provide guidance in analyzing whether Piedmont's challenge in this case was properly before the ALC as a contested case.

## II.  The CON Act & DHEC's Review Process

### A.  The CON Act

#### (1)  CON Requirements

The State Certification of Need and Health Facility Licensure Act (CON Act) governs the establishment of medical facilities and projects in South Carolina. S.C.Code Ann. §§ 44–7–110 to –385 (2002 & Supp.2008).[10] "The purpose of [the CON Act] is to promote cost containment, prevent unnecessary duplication of health care facilities and services, guide the establishment of health facilities and services which will best serve public needs, and ensure that high quality services are provided in health facilities in this State." S.C.Code Ann.

---

9.  S.C. Const. art. I, § 22 ("No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard.").

10.  The parties here rely on the version of the CON Act in the main volume and the 2008 Code Supplement because the CON Act was amended after this action arose.

§ 44–7–120 (2002). The General Assembly has designated DHEC as the sole state agency for control and administration of the program for granting CONs and the licensure of health facilities and other related activities. *Id.* § 44–7–140.

Section 44–7–160 provides a person or "health care facility" as defined under the CON Act is required to obtain a CON from DHEC before undertaking certain enumerated activities, such as constructing a new health care facility, changing the existing bed complement of a health care facility, making capital expenditures by or on behalf of a health care facility in excess of a certain threshold prescribed by regulation, or acquiring medical equipment that is to be used for diagnosis and treatment if the total project cost is in excess of an amount established by regulation. *Id.* § 44–7–160.

The CON Act defines a "health care facility" to include entities such as hospitals that provide overnight medical or surgical care, nursing homes, rehabilitation facilities, and other facilities for which a CON is required by federal law.[11] *Id.* § 44–7–130(10). Urgent care centers are not included among the entities listed as constituting a health care facility, and they are not otherwise defined in the CON Act.

An application for a CON must be submitted to DHEC and must be accompanied by proof that the applicant published a notice in a newspaper serving the area where the project is to be located announcing that an application is being made. *Id.* § 44–7–200(A), (B). After receipt of the application with proof of publication and payment of an initial application fee, DHEC

---

11. The CON Act provides: " 'Health care facility' means acute care hospitals, psychiatric hospitals, alcohol and substance abuse hospitals, methadone treatment facilities, tuberculosis hospitals, nursing homes, ambulatory surgical facilities, hospice facilities, radiation therapy facilities, rehabilitation facilities, residential treatment facilities for children and adolescents, habilitation centers for mentally retarded persons or persons with related conditions, and any other facility for which [CON] review is required by federal law." S.C.Code Ann. § 44–7–130(10) (2002). "Hospital" is defined as "a facility organized and administered to provide overnight medical or surgical care or nursing care of illness, injury, or infirmity and may provide obstetrical care, and in which all diagnoses, treatment, or care is administered by or under the direction of persons currently licensed to practice medicine, surgery, or osteopathy." *Id.* § 44–7–130(12).

shall publish a notice in the State Register that an application has been accepted for filing. *Id.* § 44–7–200(D).

Once DHEC has determined that an application is complete, "affected persons"[12] must be notified, and this notification begins the review period. *Id.* § 44–7–210(A). DHEC may hold a public hearing, if timely requested, to gather additional information and obtain public comment about the proposed project. *Id.* § 44–7–210(B). Ultimately, DHEC staff will make a proposed decision to grant or deny the CON based on the staff review, and notice of the proposed decision shall be sent to the applicant and affected persons who have asked to be notified. *Id.* § 44–7–210(D).

"The proposed decision becomes the final agency decision within ten days after the receipt of a notice of the proposed decision by the applicant unless" (1) an affected person showing good cause timely requests reconsideration of the staff decision in writing, or (2) the applicant or other affected person with standing makes a written request for a contested case hearing before the board or its designee regarding the grant or denial of the CON. *Id.* "The department's proposed decision is not final until the completion of reconsideration or contested case proceedings." *Id.* § 44–7–210(E).

"After the contested case hearing is concluded and a final board decision is made, a party who participated in the contested case hearing and who is adversely affected by the board's decision may obtain judicial review of the decision in the circuit court pursuant to the [APA]." *Id.* § 44–7–220.

### (2) Exemptions from CON Requirements

Certain institutions and transactions are exempt from CON requirements. S.C.Code Ann. § 44–7–170 (2002 & Supp.2008); 24A S.C.Code Ann. Regs. 61–15, § 104 (Supp.2008). Section 44–7–170 provides a CON is not needed for, among other things, "the offices of a licensed private practitioner whether for individual or group practice *except as provided for in*

---

12. An "affected person" under the CON Act includes, among others, the applicant, persons residing with the geographic area to be served by the applicant, and persons located in the health service area who provide services similar to the proposed project. S.C.Code Ann. § 44–7–130(1) (2002).

*Section 44–7–160(1) and (6)[.]*"[13] S.C.Code Ann. § 44–7–170(A)(2) (Supp.2008) (emphasis added).

Regulation 61–15 lists twelve transactions that are exempt from CON requirements. 24A S.C.Code Ann. Regs. 61–15 § 104(2)(a) to (*l*). Among those is an exemption for "[t]he offices of a licensed private practitioner whether for individual or group practice *except as provided for in Section 102.1.f* [.]"[14] *Id.* § 104(2)(e) (emphasis added). The term "licensed private practitioner" is not defined in the CON Act or DHEC's regulations, and the only limiting or qualifying language appears in section 44–7–170 and regulation 61–15 as specified above.

Six of the twelve exempted transactions require that approval of the exemption be obtained *in writing* from DHEC. Notably, the exemption for the office of a licensed private practitioner is *not* among those requiring DHEC to issue a written exemption. *Id.* § 104(2)(e).

If a person or health care facility is required to obtain a written exemption from DHEC, a written request for the exemption must be submitted, accompanied by a project description, including its cost and any other information deemed necessary for DHEC to make a determination on the exemption request. *Id.* §§ 104(1), 105. Thus, as to the exemptions requiring written approval from DHEC, there is a formal decision issued in such cases.

### (3) Determinations of Nonapplicability

A provider may seek a written determination from DHEC that the CON Act does not apply to a proposed project; a determination of this kind is known as a NAD. *InMed Diag-*

---

13. Section 44–7–160(1) states a CON is required for the construction or establishment of a new health care facility. S.C.Code Ann. § 44–7–160(1) (2002). Section 44–7–160(6) provides a CON is required for the acquisition of medical equipment to be used for diagnosis or treatment where the total project cost exceeds an amount specified by regulation. *Id.* § 44–7–160(6). Neither of these provisions is in contention here.

14. Section 102(1)(f) removes the exemption for the following: "The acquisition of medical equipment which is to be used for diagnosis or treatment if the total project cost is in excess of $600,000[.]" 24A S.C.Code Ann. Regs. 61–15 § 102(1)(f) (Supp.2008).

*nostic Servs., L.L.C. v. MedQuest Assocs., Inc.*, 358 S.C. 270, 594 S.E.2d 552 (Ct.App.2004). This usually occurs when a question arises as to whether the total cost of a project falls below the threshold that would otherwise trigger the requirement for a CON. *See* 24A S.C.Code Ann. Regs. 61–15 §§ 102(1)(c) ($2,000,000 threshold for capital expenditures by or on behalf of a health care facility) & 102(1)(f) ($600,000 threshold for the acquisition of medical equipment to be used for diagnosis or treatment); *see also MRI at Belfair, L.L.C. v. S.C. Dep't of Health & Envtl. Control*, 392 S.C. 314, 709 S.E.2d 626 (2011) (noting a formal written determination that the total project cost for the acquisition of medical equipment did not exceed the $600,000 threshold is procured by a NAD).

Obtaining "a NAD [is] a process for which DHEC has formulated exacting procedural requirements." *InMed Diagnostic Servs., L.L.C.*, 358 S.C. at 278–79, 594 S.E.2d at 556. The procedure is outlined in section 102 of Regulation 61–15, governing applicability, which states that "[w]hen any question exists, a *potential applicant* shall forward a letter requesting a formal determination by [DHEC] as to the applicability of the [CON] requirements to a particular project." 24A S.C.Code Ann. Regs. 61–15, § 102(3) (emphasis added). "Such a letter shall contain a detailed description of the project including the extent of modifications, changes in services, and total costs." *Id.* "Additional information may be requested as may be reasonably necessary to make such applicability determination." *Id.* "The Department shall respond within sixty days of receipt of the necessary information." *Id.* Thus, by its terms, the NAD procedure is directed to a *potential applicant*, and it requires DHEC to issue a formal determination to that party regarding whether or not a CON is necessary for a proposed project.

## B. DHEC Provisions Governing Review

Section 44–1–60, governing appeals from DHEC decisions giving rise to contested case hearings, provides that "[a]ll department decisions involving the issuance, denial, renewal, suspension, or revocation of permits, licenses, or other actions of the department which may give rise to a contested case shall be made using the procedures set forth in this section." S.C.Code Ann. § 44–1–60 (Supp.2008).

"The initial decision involving the issuance, denial, renewal, suspension, or revocation of permits, licenses, or other action of the department *shall be a staff decision." Id.* § 44–1–60(C) (emphasis added).

"In making a staff decision on any permit, license, certification or other approval, the department staff shall take into consideration all material comments received in response to the public notice in determining whether to issue, deny or condition such permit, license, certification or other approval." *Id.* § 44–1–60(D). "At the time that such staff decision is made, the department shall issue a department decision, and shall base its department decision on the administrative record which shall consist of the application and supporting exhibits, all public comments and submissions, and other documents contained in the supporting file for the permit, license, certification or other approval." *Id.*

"Notice of the department decision must be sent to the applicant, permittee, licensee, and affected persons who have asked to be notified by certified mail, return receipt requested." *Id.* § 44–1–60(E). "The department decision becomes the final agency decision fifteen days after notice of the department decision has been mailed to the applicant, unless a written request for final review is filed with the department by the applicant, permittee, licensee, or affected person." *Id.*

Not later than sixty days after the receipt of a request for final review, a final review conference must be conducted by the DHEC Board or its designee. *Id.* § 44–1–60(F). "If a final review conference is not conducted within sixty days, the department decision becomes the final agency decision, and an applicant, permittee, licensee, or other affected person may request a contested case hearing before the [ALC], in accordance with the [APA], within thirty days after the deadline for the final review conference." *Id.*

After review, the DHEC Board or its designee "shall issue a *written final agency decision* based upon the evidence presented." *Id.* § 44–1–60(F)(2) (emphasis added). "The *written decision* must explain the bases for the decision and inform the parties of their right to request a contested case hearing before the [ALC]." *Id.* (emphasis added). "[T]he written decision must be mailed to the parties. . . ." *Id.* "Within thirty

days after the receipt of the decision an applicant, permittee, licensee, or affected person desiring to contest the final agency decision may request a contested case hearing before the [ALC], in accordance with the [APA]." *Id.*

With this background in mind, we turn now to DHEC's arguments regarding whether there was a decision in the current matter that was subject to a contested case proceeding.

### III. Jurisdiction for Contested Case

DHEC contends the ALC did not have subject matter jurisdiction to conduct a contested case hearing because there was no staff decision issued by DHEC requiring notice and an opportunity to be heard.

DHEC asserts, "A telephone conversation between a staff member and an attorney is not a staff decision within the purview of S.C.Code Ann. § 44–1–60 (Supp.2008); nor is an affidavit by an attorney recounting a telephone conversation with a staff member. In ruling otherwise, the Court of Appeals improperly applied S.C.Code Ann. § 44–1–60 (Supp. 2008)." *See* S.C.Code Ann. § 44–1–60(C) ("[T]he initial decision involving the issuance, denial, renewal, suspension, or revocation of permits, licenses, or other action of the department *shall be a staff decision.*" (emphasis added)).

DHEC argues that neither CPN nor CHS sought a certificate evidencing permission to open the urgent care center because a CON was not required by law, and a private physician's office is not one of the exemptions requiring a party to obtain written proof of its entitlement to the exemption from DHEC. *See* 24A S.C.Code Ann. Regs. 61–15 § 104(2)(e). Thus, since there was no approval or permission *required by law* from DHEC for the offices of a licensed private physician, in the form of a CON, NAD, formal exemption, or any other manner, there was no decision issued by DHEC that qualifies for a contested case hearing before the ALC, citing S.C.Code Ann. § 1–23–600(A) (authorizing the ALC to preside over hearings of contested cases involving DHEC) and S.C.Code Ann. § 1–23–505(3) (defining a contested case as a "proceeding including, but not restricted to, ratemaking, price fixing, and licensing, in which the legal rights,

duties, or privileges of a party *are required by law* or by Article I, Section 22, Constitution of the State of South Carolina, 1895, to be determined by an agency or the [ALC] after an opportunity for hearing" (emphasis added)). DHEC further argues that, because there was no formal staff decision subject to review, the Clerk of the DHEC Board properly notified Piedmont that the Board would not hold a final review conference.

In contrast, Piedmont maintains the ALC did have jurisdiction, stating, "Because DHEC made the decision that hospital-owned urgent care facilities are exempt from DHEC CON review and this decision adversely affects Piedmont, the [ALC] has jurisdiction to review this matter." Like DHEC, it also cites the statutory language in section 44–1–60(C), but particularly relies upon the portion stating an initial decision involving permits, licenses, *"or other action of the department* shall be a staff decision." *See id.* § 44–1–60(C) (emphasis added).

Piedmont alleges it was DHEC's unwillingness to communicate its "staff decision" in writing that caused it to take the unusual step of relying upon counsel's affidavit to memorialize the decision in order to seek a contested case hearing. Piedmont maintains this unwritten staff decision became a final agency decision when the board met in February 2009 and decided to deny Piedmont's request for review, a written decision evidenced by the letter that was sent to Piedmont. *See id.* § 44–1–60(F) ("If a final review conference is not conducted within sixty days, the department decision becomes the final agency decision, and an applicant, permittee, licensee, or affected person may request a contested case hearing before the [ALC], in accordance with the [APA], within thirty days after the deadline for the final review conference.")

Piedmont maintains that, as a purported "affected person," it was entitled to challenge DHEC's determination in a contested case hearing. Piedmont further alleges that, under the DHEC regulations, CPN or CHS should have sought an applicability determination from DHEC if any question existed regarding the project.[15] *See* 24A S.C.Code Ann. Regs. 61–15 § 102(3) (governing the procedure for obtaining a NAD).

---

15. However, we find that, where the potential applicant, here CPN, did not make such a request based on its belief that it did not need DHEC

In finding there was a decision subject to a contested case hearing before the ALC, the Court of Appeals stated, "The record indicates that there was a decision by the Department to exempt the Center from review." *Amisub of S. C., Inc. v. S.C. Dep't of Health & Envtl. Control,* Op. No.2010–UP–523, slip op. at 3 (S.C. Ct.App. refiled Apr. 25, 2011). "For example, in a letter from CHS to the Department dated December 19, 2007, CHS stated that the Department provided notification that the Center was exempt from CON review." *Id.* "Also, in a letter dated February 13, 2009, from the Department, written to CHS and Piedmont, the Department stated, '[t]he S.C. Board of Health and Environmental Control decided on February 12, 2009, not to conduct a Final Review Conference on the above-referenced matter.'" *Id.* (alteration in original). The court noted DHEC's letter declining to conduct a final review conference referenced in the subject line a "Staff *decision* dated October 26, 2007," and included in the same letter was a reference to section 44–1–60(F). *Id.*

We agree with DHEC that the first letter cited by the Court of Appeals as evidence of a staff decision, the letter dated December 19, 2007 from CHS to DHEC, refers, on its face, to an unrelated staff decision issued in a separate matter, i.e., DHEC's grant of an exemption to CHS in 2007 for the construction of the medical office *building.* It did not constitute a decision on the subsequent opening of the urgent care center, which occurred some two years later. Moreover, the letter is from one of the parties; it is not a formal decision issued by DHEC.

■ We also find no support for the determination by the Court of Appeals that there was a staff decision as to the urgent care center based on the letter dated February 13, 2009 from DHEC declining the request for a final review conference. Piedmont had cited section 44–1–60(F), which provides that a *department decision* becomes the final agency decision *if* a final review conference is not timely conducted, to support its argument that the DHEC Board's failure to conduct a review conference gave rise to a final agency decision subject to a contested case hearing. However, this reference

approval, this failure cannot serve as the basis for a reviewable decision in a contested case matter.

to the statute in DHEC's letter declining review was included along with other information outlining general review procedures, and neither DHEC's general reference to section 44–1–60(F) nor the statute itself can transform a letter simply declining review into a staff decision. In this case, there is no original *department decision* existing that could have become a final agency decision under the statute.

■ DHEC asserts the Court of Appeals did not specifically address Piedmont's contention that counsel's affidavit memorializing the alleged staff decision could be considered sufficient to demonstrate a decision subject to review. We believe this only serves to further illustrate the nebulous nature of Piedmont's contention. In any event, we find the phone conversation with DHEC staff is not a "staff decision" on the grant or denial of a license, permit, or other matter for which a determination is required by law, and it does not fall within the statutory parameters for a contested case.

CPN and CHS neither sought nor received a formal approval from DHEC for a CON or a NAD, and there was no license, order, or decision issued. If DHEC had determined that CPN was in violation of any applicable provision, it was entitled to pursue an enforcement action. DHEC, however, never found that CPN or CHS was in violation of any procedures.

Piedmont alleges DHEC has taken a contradictory position in this case because it has argued there was no staff decision, while at the same time the affidavit of its CON Director shows that DHEC did make a decision to exempt the urgent care center from CON requirements. However, we discern no inconsistency in DHEC's position. DHEC has averred there was no formal, written decision in this case because the statutory and regulatory exemption for the offices of a licensed private practitioner do not mandate that a provider obtain a written exemption from DHEC on this basis. Thus, there was no formal staff decision required by law, and there was no staff decision issued that was subject to the ALC's review.

■ Piedmont's dispute here essentially concerns its desire to challenge CPN's entitlement to an exemption from the CON process based on its status as the office of a licensed

private practitioner. Under the CON Act and the regulation, this exemption does not require a formal, written determination or approval from DHEC. In urging that it be allowed to assert its challenge in a contested case proceeding, Piedmont maintains the lack of a written exemption and formal decision would insulate DHEC's decisions in this regard from any oversight. DHEC, in contrast, alleges that to allow Piedmont to utilize the contested case process, which is specifically defined and limited by our General Assembly, would subject DHEC to an overwhelming number of contested case matters on everyday decisions that the General Assembly did not see fit to subject to CON review or the contested case process.

Our review of the relevant statutes and regulations evinces the clear delineation of separate procedural tracks in these matters. For example, CON applications must go through a rigorous and detailed examination before resulting in a formal decision. The NAD procedure, which is less exacting, is used when *an applicant* (not a competitor) is unsure whether the total project costs will be under the threshold that would otherwise require a CON. In addition, some of the exemptions require that approval for the exemption be obtained in writing from DHEC, while others do not; in such cases, however, the requirement for written approval is expressly noted within the exemption. In each of the foregoing circumstances, i.e., where there is a CON, a NAD, or an exemption for which written approval is required, a formal decision emanates from DHEC for which a contested case proceeding is provided by law.

Since there was no legal duty owed by DHEC to issue a staff decision in this matter, which is the trigger giving rise to a contested case, there was no corresponding obligation that Piedmont be afforded a contested case hearing before the ALC. Accordingly, we hold Piedmont may not utilize the contested case review process where it has not been authorized by the General Assembly.

## CONCLUSION

Based on the foregoing, we conclude the Court of Appeals erred in finding Piedmont has established the existence of a staff decision by DHEC that is properly the subject of a

contested case hearing and in remanding the matter for discovery and further proceedings.[16]

REVERSED.

PLEICONES, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur. HEARN, J., concurring in result only.

---

16. Although we conclude the ALC lacked jurisdiction to review this matter in a contested case proceeding, we find no fault in the ALC's reasoning. The General Assembly did not choose to include an "urgent care center" in its statutory definition of a "health care facility." The only possible item the center could fall under is a "hospital," but the center clearly does not meet the CON Act's definition of a hospital because it does not offer medical and surgical services to its patients on an overnight basis. Thus, to *sua sponte* include an "urgent care center" within the statutory definition of a "health care facility" would be beyond the function of this Court. Moreover, we are concerned that Piedmont's suggestion that we should treat physicians' offices owned by hospitals differently from those that are not would constitute an improper judicial restriction on a legislative provision, and it would effectively eviscerate the private business model, a result that we do not believe was ever intended by the General Assembly. The statutory and regulatory provisions regarding the exemption for a private physician's office contain the only restrictions set forth by the General Assembly and by DHEC, respectively, and Piedmont cannot independently engraft additional limitations that were not so specified by those authorities.