# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

PROVIDENCE PHYSICIAN SERVICES CO.,

Appellant,

v.

WASHINGTON STATE DEPARTMENT OF HEALTH; ROCKWOOD HEALTH SYSTEM d/b/a VALLEY HOSPITAL,

Respondents.

No.  47885-4-II

PUBLISHED OPINION

BJORGEN, C.J. — Providence Physician Services Co. (PPSC) appeals the superior court decision affirming the final order by the Department of Health (Department) ruling that PPSC did not qualify for an exemption from the Certificate of Need (CN) Program for its proposed ambulatory surgical facility.  WAC 246-310-010(5) provides the exemption at issue, which permits an ambulatory surgical facility "in the offices of private physicians . . . whether for individual or group practice" without CN approval, as long as "the privilege of using the facility is not extended to physicians . . . outside the individual or group practice" (the ASF exemption).

PPSC, a physician group entirely owned by Providence Health and Services − Washington (Providence), requested a determination as to whether the ASF exemption applied to it and its proposed facility.  After an adjudicative process, the Department ultimately concluded that PPSC did not qualify for the ASF exemption.  The superior court affirmed the Department. PPSC now appeals to this court, arguing that (1) the Department erred because the ASF exemption does not require a physician group (a) to be separately and independently owned and (b) to possess its own facility space; and (2) the Department engaged in improper rule making without abiding by the required formal rule making procedures.

We hold that the Department did not err in finding that Providence's ownership of PPSC disqualified it from the ASF exemption, although it did err to the extent it ruled that PPSC must own the facility space to qualify for the exemption. Furthermore, we hold that the Department did not engage in rule making with its interpretation of the ASF exemption. Accordingly, we affirm.

FACTS

Providence is a large nonprofit health care conglomerate that operates healthcare facilities in and outside of Washington. Through one of its subsidiaries, Providence is the sole shareholder and owner of PPSC. PPSC is a separately created for-profit corporation that employs 27 surgeons.

Recently, Providence built the Providence Sacred Heart Medical Center (Medical Center) in Spokane, a 134,000 square feet medical park with two separate buildings connected by an adjoining bridge. The Medical Center provides a wide range of health care services, including ambulatory surgical facilities. An ambulatory surgical facility is "any free-standing entity . . . that operates primarily for the purpose of performing surgical procedures to treat patients not requiring hospitalization." WAC 246-310-010(5). PPSC proposed to lease from Providence a portion of the Medical Center's building that contained the ambulatory surgical center and to limit that facility's privileges to PPSC surgeons.

PPSC submitted this proposal to the Department's CN Program for a determination as to whether it would be subject to CN approval. WAC 246-310-050. The CN Program initially decided that PPSC was not required to obtain a CN for the new facility because the proposed facility did not qualify as an ambulatory surgical facility under the ASF exemption. That exemption reads:

> Th[e] term [ambulatory surgical facility] does not include a facility in the offices of private physicians or dentists, whether for individual or group practice, if the privilege of using the facility is not extended to physicians or dentists outside the individual or group practice.

WAC 246-310-010(5). Rockwood Health System objected to the CN Program's determination and requested an adjudicative proceeding to determine the applicability of the ASF exemption. WAC 246-310-610. The parties agreed that this issue could be fully resolved through a summary judgment proceeding, since there were no genuine issues of material fact and the legal issue was whether the ASF exemption applied to PPSC's proposed facility.

The Department's hearing officer presiding over the initial adjudicative proceeding ruled that PPSC's proposed interpretation of the ASF exemption was too broad and rendered the term "private" meaningless. Administrative Record (AR) at 228. In addition, the hearing officer noted that a statutory provision should be construed in accordance with the CN's purpose to control health care costs by ensuring better utilization of existing medical services and to limit the expansion of new medical services. The hearing officer construed the ASF exemption narrowly because the legislature had not created any specific exemption for ambulatory surgery centers. The hearing officer concluded that if PPSC surgeons owned the proposed ambulatory surgery center, it would qualify for the ASF exemption. However, because Providence owned PPSC's ambulatory surgery center, the hearing officer held the ASF exemption inapplicable.

PPSC sought review of the Department's initial order before a departmental review officer. WAC 246-10-608, -701(1). The review officer concluded that PPSC did not qualify for the ASF exemption on two grounds: first, because PPSC's proposed ambulatory surgical center would be located in the Medical Center, which is a mixed use ambulatory health care facility, and second, because PPSC surgeons are employees of Providence, and even if they were not

3

employees, PPSC is entirely owned by Providence. Thus, both the hearing officer and the review officer relied on Providence's ownership as a reason for denying the exemption.

In reaching his decision, the review officer relied on the definition of "private practice" in *Merriam Webster's Online Dictionary*, which is the "practice of a profession (as medicine) independently and not as an employee." AR at 310; *http://www.merriam-webster.com*. The review officer also noted that PPSC was not a private practice because "PPSC itself characterized its practice as neither a solo nor group practice." AR at 310 n.7. Thus, the review officer concluded that to allow PPSC's proposed facility to qualify for the ASF exemption would "undermine the statutory requirement that [ambulatory surgical facilities] be subject to CN review." AR at 310. Along with the above conclusions, the review officer also incorporated the hearing officer's initial order into the Department's final order.

The superior court affirmed the Department's final order, and PPSC appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

In reviewing an administrative action, we sit in the same position as the superior court and apply the Administrative Procedure Act (APA), chapter 34.05 RCW, standards directly to the agency's administrative record. *Shaw v. Dep't of Ret. Sys.*, 193 Wn. App. 122, 128, 371 P.3d 106 (2016). Thus, we do not review the superior court's decision; rather, we examine the agency's final order, except to the extent that the review officer adopts the hearing officer's initial order. *See Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015); RCW 34.05.570(3). The Department's decision in a CN case is presumed correct, and the challenger has the burden to overcome that presumption. *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 49-50, 239 P.3d 1095 (2010).

Because questions of law are the only issues in this appeal, we review the Department's actions—whether characterized as adjudicative or "rule making"— under the error of law standard. *See Verizon Nw., Inc. v. Wash. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008) (citing RCW 34.05.570(3)(d)). This standard allows us to substitute our view of the law for that of the Department's. *Id.* If, however, the particular law was promulgated by the Department or is within the scope of its expertise, we accord substantial weight to the Department's interpretation. *Id.*

## II. INTERPRETATION OF THE ASF EXEMPTION

PPSC argues that the Department erred in interpreting the ASF exemption because the exemption does not require a physician group to be separately and independently owned and to possess its own facility space. As explained below, we find that the Department did not err in its interpretation to the extent it determined that Providence's ownership of PPSC disqualified it from the ASF exemption, but did err to the extent it determined that PPSC must own the facility space to qualify for the exemption.

1.      Legal Principles

The legislature has authorized the Department, through an appointed secretary, to administer the CN Program. RCW 70.38.105(1), .025(4); RCW 43.70.030. "The CN program was created as part of Washington's health planning strategy to 'promote, maintain, and assure the health of all citizens in the state, provide accessible health services, health manpower, health facilities, and other resources while controlling increases in costs, and recognize prevention as a high priority in health programs.'" *Overlake Hosp. Ass'n*, 170 Wn.2d at 50 (quoting RCW 70.38.015(1)).

5

In order for an entity to construct, develop, or establish a new "health care facility," it must obtain a CN from the Department. RCW 70.38.105(4)(a). Health care facilities include ambulatory surgical facilities. RCW 70.38.025(6); WAC 246-310-010(26). While the legislature did not define "ambulatory surgical facility," the Department defined the term as:

> any free-standing entity, including an ambulatory surgery center that operates primarily for the purpose of performing surgical procedures to treat patients not requiring hospitalization. *This term does not include a facility in the offices of private physicians or dentists, whether for individual or group practice, if the privilege of using the facility is not extended to physicians or dentists outside the individual or group practice.*

WAC 246-310-010(5)[1] (emphasis added.) The italicized part of the Department's definition created an exception for a certain type of ambulatory surgical facility that would otherwise require CN approval. The interpretation of this exemption is the subject of this appeal.

The rules of statutory construction apply to agency created rules and regulations. *Odyssey Healthcare Operating B, LP v. Dep't of Health*, 145 Wn. App. 131, 141, 185 P.3d 652 (2008). The primary goal of statutory construction is to determine and give effect to the legislature's intent. *SEIU Healthcare 775NW v. Dep't of Soc. & Health Servs.*, 193 Wn. App. 377, 398, 377 P.3d 214, *review denied*, 186 Wn.2d 1016 (2016). To decipher legislative intent, we examine the plain language of the statute, the context of the statute in which the provision is found, and related statutes. *Id*. "When the statute at issue or a related statute includes an applicable statement of purpose, we interpret statutory language in a manner consistent with that stated purpose." *Id*.

---

[1] In *Washington State Hosp. Association v. Washington State Department of Health*, 183 Wn.2d 590, 353 P.3d 1285 (2015), our Supreme Court held that WAC 246–310–010(54) was invalid because the Department exceeded its authority in promulgating that provision.

"To discern the plain meaning of undefined statutory language, we give words their usual and ordinary meaning and interpret them in the context of the statute in which they appear." *Id.* at 399. "'We may use a dictionary to discern the plain meaning of an undefined statutory term.'" *Id.* (quoting *Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015)). Generally, "statutory exceptions are construed narrowly in order to give effect to the legislative intent underlying the general provisions." *Foster v. Dep't of Ecology*, 184 Wn.2d 465, 473, 362 P.3d 959 (2015).

2.      "Private Physicians" in a "Group Practice"

Using these legal principles, we must decide whether the Department's final interpretation of the meaning of "private physicians" in a "group practice" was an error of law. We hold that the Department did not err.

PPSC's main argument is that it is a "group practice" of "private physicians" within the ASF exemption's plain language and that the ASF exemption does not contemplate a distinction between physician groups based on ownership. The Department and Rockwood contend that the Department's decision to rely on the dictionary definition of "private practice" to find PPSC not qualified for the ASF exemption was sound and was in accordance with the statutory scheme and the CN Program's purpose.

As noted previously, the review officer relied on the *Merriam Webster's Online Dictionary* definition of "private practice," which is the "practice of a profession (as medicine) independently and not as an employee." MERRIAM WEBSTER'S, *supra*. PPSC is correct that the words "private" and "practice" are not written immediately next to each other in the language of the ASF exemption. Instead, the exemption covers "a facility in the offices of private physicians or dentists, whether for individual or group practice, [as long as] the privilege of using the

7

facility is not extended to physicians or dentists outside the . . . practice." WAC 246-310-010(5). Thus, the "private physicians" who qualify for the exemption must also be organized for "individual or group practice." Since "private physicians" in a "practice" reasonably implies a private practice, the Department properly relied on the definition of "private practice" in its interpretation of the ASF exemption.

PPSC counters that, under this definition of "private practice," associates at law firms would not be considered engaged in "private practice" because they do not have an ownership interest in their firms. This argument, however, confuses the dictionary definitions of "private practice" with its more colloquial meaning. Under a general dictionary definition (not the medical definition noted above), the term includes not only professionals who do not work for the government, but also those that are "not controlled or paid for by . . . a larger company (such as a hospital)." MERRIAM WEBSTER'S, *supra.* Therefore, the lawyer who worked either for the public or for a large legal company or law firm would not be considered engaged in "private practice" under these dictionary definitions. Although PPSC tries to appeal to our colloquial understanding of "private practice" in law firms, the dictionary defines "private practice" uniformly across the professions as those not controlled by a larger company. A group of physicians, therefore, who are controlled or paid for by a hospital would not fall under the definition of "private practice."

Providence, through one of its subsidiaries, is the sole shareholder and owner of PPSC. Thus, the review officer correctly determined that PPSC surgeons are not engaged in private practice under these definitions and therefore do not fall under the terms of the ASF exemption.

Even if we were hesitant in following the Department's use of dictionary definitions in interpreting the ASF exemption, the Department's interpretation is demanded by the purpose of

the CN Program. We will uphold an agency's interpretation "if it reflects a plausible construction of the language of the statute and is not contrary to the legislative intent." *Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs*., 82 Wn. App. 495, 518, 919 P.2d 602 (1996). A central purpose of the CN Program is to control health care costs by ensuring better utilization of existing medical services and limiting the expansion of new medical services. *See* RCW 70.38.015.

These policies would be eviscerated under PPSC's interpretation. Simply put, under PPSC's theory, a hospital that sought to establish an ambulatory surgical facility could circumvent the CN requirement merely by creating another entity, which in effect would still be under the ownership and direction of the hospital. By repeating this scenario, hospitals would be able to balloon the amount of ambulatory surgical facilities in Washington and undermine the cost controlling measures of the CN Program through the guise of a pseudo-subsidiary that is otherwise under the authority of the hospital. We agree with the Department that to entertain such an interpretation of the rule would emasculate the CN's underlying policies by exalting "form over substance." *Safeco Ins. Co. v. Meyering*, 102 Wn.2d 385, 394, 687 P.2d 195 (1984).

Both parties discuss in great detail prior decisions from the Department's CN Program, each finding cases that support their respective position. PPSC cites three decisions where the Department's administrators concluded that the ASF exemption applied to hospital-owned physician groups that limited the use of their ambulatory surgical facilities to only those physicians. The Department and Rockwood cite two prior decisions where the Department concluded the opposite. As Rockwood points out though, these initial analyst decisions have no binding effect in ascertaining whether the Department erred in its interpretation of the ASF exemption. *See DaVita, Inc. v. Dep't of Health*, 137 Wn. App. 174, 181-84, 151 P.3d 1095

9

(2007). Furthermore, even if the initial analyst decisions were entitled to any deference, they were inconsistent at best.

The Department and Rockwood also bring to our attention the only prior decision that was subject to the Department's adjudicative process: the *Multicare* case. In that case, Multicare sought to qualify for the ASF exemption for its "corporate division" the Multicare Medical Associates (MMA). MMA was subject to Multicare's corporate control, including the managing of MMA's billing, collection, and setting of fees. Multicare would hire the physicians through MMA. The Department in *Multicare* ruled that

> [t]he common meaning of "private" within the CN regulatory context does not include this type of corporate employed physician. Within this context, private physicians or private practice physicians are those who practice privately, as physicians separate from a large non-physician health care entity. The "group practice" exemption to the CN regulation was intended to assist the private practice physician for the treatment of their own patients in their own offices. An interpretation of [the ASF exemption] that would permit large, non-physician health care entities to utilize the exemption, would create an enormous exemption for hospitals or other non-physician corporations that would defeat the very purpose of the CN law of ambulatory surgical centers.

AR 66 (Paragraph 2.12).

Although we ultimately vacated the Department's decision based on its lack of jurisdiction, *see Multicare Health System v. Department of Health*, noted at 147 Wn. App. 1024 (2008), that decision did not affect the Department's ruling immediately above on the meaning of the ASF exemption. That ruling is consistent with the Department's interpretation of the exemption in the current case and further buttresses our conclusion that PPSC's proposal does not fall under the ASF exemption.

PPSC contends that *Multicare* is distinguishable because Multicare itself sought to rely upon the ASF exemption rather than a separately created entity, such as PPSC. We are hard pressed, however, to find a difference of significance to these issues between a corporate

subdivision such as MMA, and a separate legal entity such as PPSC, entirely owned by the hospital. As already stated, we will not permit an interpretation of the ASF exemption that promotes "form over substance." *Safeco Ins. Co.*, 102 Wn.2d at 394.

Finally, PPSC argues that *Amisub of South Carolina, Inc. v. South Carolina Department of Health and Environmental Control*, 403 S.C. 576, 743 S.E.2d 786 (2013), is persuasive authority from South Carolina on the interpretative issue at hand. In *Amisub*, a nonprofit healthcare system owned a physician group, "CPN," and sought to build a new urgent care center. *Id*. at 578-79. South Carolina law provided that "health care facilities" were subject to CN review, which included hospitals, but not urgent care centers. *Id*. at 587. Further, South Carolina law specifically exempted "'the offices of a licensed private practitioner whether for individual or group practice'" from CN requirements. *Id*. at 589 (quoting S. C. CODE ANN. § 44-7-170(A)(2)).

Although the *Amisub* court decided the case on jurisdictional grounds, in dicta it stated that an urgent care center did not qualify as a "hospital" as to become a "health care facility" subject to CN review. *Id*. at 597 n.16. Further, the court noted that the urgent care center would not have been subject to CN review because the private practitioner exemption does not contemplate "treat[ing] physicians' offices owned by hospitals differently." *Id*. To do so "would constitute an improper judicial restriction on a legislative provision, and it would effectively eviscerate the private business model, a result that we do not believe was ever intended by the General Assembly." *Id*.

Because South Carolina statutes did not list urgent care centers as a type of facility requiring CN review, *id*. at 587, this decision is of little moment to the appeal before us. In addition, the *Amisub* court's concern that imposing CN review under its facts would "eviscerate

the private business model" in South Carolina, *id.* at 597 n.16, does not raise any concern about Washington's CN Program. As already noted, the CN Program's goal in Washington is to provide accessible and efficient use of health services, while controlling costs, *Overlake*, 170 Wn.2d at 50 (citing RCW 70.38.015(1)), and we interpret the ASF exemption in accordance with this purpose. *SEIU Healthcare*, 193 Wn. App. at 398.

Whether we consult the definitions of relevant terms, prior decisions, or, most importantly, the purposes of the CN program, PPSC's proposal should not be deemed a facility in the offices of private physicians for individual or group practice under the plain language of the exemption. Thus, the Department correctly determined that PPSC's proposal did not fall within the ASF exemption.

3.      Space-Ownership Requirement

PPSC next argues that the Department erred in reading a "space-ownership" requirement into the ASF exemption. Br. of Appellant at 30-32. Rockwood responds that this is a "red herring" and not germane. Brief of Rockwood at 16-17. We agree that the Department arguably interpreted the ASF exemption to require PPSC to own its space within the Medical Center. To that extent, we agree with PPSC that the Department erred in this reading of the ASF exemption.

The ASF exemption provides that an ambulatory surgical facility "does not include a *facility* in the *offices* of private physicians." WAC 246-310-010(5) (emphasis added). The plain meanings of "facility" and "offices" do not contemplate a requirement that private physicians must own the ambulatory surgical facility in which they work. Furthermore, the purposes of the CN Program would not be furthered merely by requiring a truly private group practice of physicians to own the space in which they operate.

12

Thus, to the extent the Department imposed a space-ownership requirement to qualify for the ASF exemption, it erred.

### III. RULE MAKING AUTHORITY

PPSC next argues that the Department's interpretation of the ASF exemption was a "rule" subject to the formal rule making procedures outlined in the APA. The Department argues that PPSC waived this issue, and even if not waived, the Department and Rockwood contend that the Department's interpretation did not create a new "rule." Although we disagree that PPSC waived this challenge, we do agree with the respondents that the Department's interpretation of the ASF exemption was not a rule subject to the formal rule making procedures.

1.  Waiver

The Department contends that we should not consider this argument because PPSC failed to raise it in the adjudicative proceedings and did not preserve the issue for appeal. PPSC argues that under this particular factual scenario, where the new interpretation of the ASF exemption was the result of the Department's adjudicative proceedings, it should have been entitled to challenge what it believed to be "rule making" for the first time at the superior court.

We agree with PPSC. Only at the close of the adjudicative proceedings was PPSC faced with the action it claims was rule making. In this posture, PPSC did not waive its rule making claim by failing to raise it during the adjudicative proceedings.

2.  Interpretation of Rule

The APA sets out certain formal requirements that an agency must follow before adoption of a new rule. *City of Vancouver v. Pub. Emp't Relations Comm'n*, 180 Wn. App. 333, 361-62, 325 P.3d 213 (2014) (citing RCW 34.05.310-.395). If an agency adopts a rule without compliance with these required procedures, the rule is invalid. RCW 34.05.570(2)(c). However,

"'it is axiomatic that [f]or rule making procedures to apply, an agency action or inaction must fall into the APA definition of a rule.'" *Id*. at 361-62 (internal quotation marks omitted) (quoting *Budget Rent A Car Corp. v. Dep't of Licensing*, 144 Wn.2d 889, 895, 31 P.3d 1174 (2001)) (alteration in original). In order to qualify as a "rule" under the APA, two elements must be satisfied. *Budget Rent A Car*, 144 Wn.2d at 895. First, an agency action must be an "order, directive, or regulation of general applicability." RCW 34.05.010(16)[2]. Second, as applicable to this appeal, the agency action must

> (c) . . . [e]stablish[], alter[], or revoke[] any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law; [or]
> (d) . . . [e]stablish[], alter[], or revoke[] any qualifications or standards for the issuance, suspension, or revocation of licenses to pursue any commercial activity, trade, or profession[.]

*Id*.

In applying this definition of "rule" to agency actions, Washington courts have repeatedly held that agencies are empowered to interpret a statute or regulation without going through formal rule making procedures. Examples include interpretation of the phrases "the total of all passenger cars in the fleet," *Budget Rent A Car*, 144 Wn.2d at 893, 897-98, and "sale or issuance," *Regan v. Department of Licensing*, 130 Wn. App. 39, 55, 121 P.3d 731 (2005), as well as the word "reasonable." *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 96 Wn. App. 804, 812, 981 P.2d 459 (1999) (reasoning approved of in *Budget Rent A Car*, 144 Wn.2d at 897). Although the "APA is designed to provide 'greater public and legislative access to administrative decision making,'" an otherwise broad interpretation of "rule" would "serve as the

---

[2] RCW 34.05.010 was amended in 2013 and 2014. These amendments do not affect the issues in the present case.

straightjacket of administrative action." *Budget Rent A Car*, 144 Wn.2d at 898 (quoting RCW 34.05.001).

If, however, an agency adds a new requirement to an already well defined regulation, that requirement will be deemed a "rule" subject to the formal rule making procedures. *Failor's Pharmacy v. Dep't of Soc. & Health Servs.*, 125 Wn.2d 488, 886 P.2d 147 (1994). In *Failor's Pharmacy*, the Department of Social and Health Services (DSHS) had two specifically articulated factors for calculating Medicaid reimbursement to pharmacies. *Id*. at 490-91. DSHS later decided to use an additional consideration in calculating Medicaid reimbursement that was not contemplated within the two original factors. *Id*. at 491-92. The *Failor's Pharmacy* court held that DSHS's new consideration was a "rule," *id*. at 494, that "'functionally added a third requirement to the two requirements set out in the regulations.'" *Budget Rent A Car*, 144 Wn.2d at 897 (quoting *McGee Guest Home*, 142 Wn.2d at 323) (characterizing the holding in *Failor's Pharmacy* in this manner). Thus, while Washington courts have recognized that an administrative agency cannot add additional requirements to an already well articulated regulation without formal rule making, they have repeatedly concluded that interpretation of broadly written existing law is within its adjudicative authority. *Budget Rent A Car*, 144 Wn.2d at 897-98; *Regan*, 130 Wn. App. at 55; *McGee Guest Home*, 96 Wn. App. at 812.

PPSC is correct that the Department's interpretation of the ASF exemption will be generally applicable to any hospital-owned physician group that tries to apply for that exemption. However, adjudicative proceedings that resolve an issue of interpretation frequently have some general effect. That general effect, though, does not necessarily transform that resolution into rule making. As long as the *Failor's Pharmacy* rule is observed, that effect no more transforms

the Department's adjudication into rule making than it transforms a court's ruling upholding the action into legislation.

Unlike *Failor's Pharmacy*, the Department in this appeal did not attempt to promulgate additional requirements to qualify for the ASF exemption. Rather, it exercised its interpretative authority to give meaning to the existing language that established the existing contours of the exemption. That interpretation of the ASF exemption is similar to the agency interpretations in *Budget Rent A Car*, *Regan*, and *McGee Guest Home*, which were found to not be rule making.

PPSC argues that the Department engaged in rule making because its interpretation of the ASF exemption contradicts its earlier administrative decisions to allow hospital-owned physician groups to qualify for the exemption. As we noted above, however, the prior initial determinations of the Department were inconsistent at best. In particular, the *Multicare* decision questioned any prior decisions allowing hospital-owned physician groups to qualify for the ASF exemption.

Even assuming that the Department was consistent in its prior decisions to allow hospital-owned physician groups to qualify for the exemption, they were made by administrators deciding the specific case before them on an ad hoc basis. At oral argument, PPSC cited WAC 246-310-050(5) for the proposition that a specific applicability determination relating to a particular party binds the Department in a later interpretation of a regulation's meaning. However, these initial decisions by administrators are not binding on the Department generally, but only on the specific parties involved. *See DaVita*, 137 Wn. App. at 181-84.

For these reasons, we hold that the Department did not engage in rule making.

## CONCLUSION

We hold that the Department did not err in its interpretation that Providence's ownership of PPSC disqualified PPSC's proposal from the ASF exemption, but did err to the extent it determined that PPSC must own the facility space to qualify for the exemption. We also hold that the Department's interpretation of the ASF exemption did not constitute a rule requiring it to engage in formal rule making procedures. Accordingly, we affirm.

Bjorgen, C.J.

We concur:

WORSWICK, J.

MAXA, J.